IN THE

# SUPREME JUDICIAL COURT

## FOR THE COUNTY OF BRISTOL, OCTOBER TERM, 1861.

PRESENT:

Hon. GEORGE T. BIGELOW, Chief Justice.
Hon. THERON METCALF,
Hon. PLINY MERRICK,
Hon. EBENEZER R. HOAR, } Justices.
Hon. REUBEN A. CHAPMAN,

---

### Commonwealth vs. Horace T. Viall.

An ancient burial-ground, which for sixty years has been separated by a fence from the adjoining land, and used occasionally for burials until the present time, may be described as a public burial-ground in an indictment for destroying trees in a place of burial, under Gen. Sts. c. 28, § 12, although it can only be reached by a way, which has always been used for the purpose, over an adjoining private estate, of which it was originally a part, and the owners of which built and have maintained the fence for their own convenience, and have depastured the burial-ground, cut the trees upon it, and cultivated parts of it at their pleasure, under a claim of right, and no one else has exercised or claimed any control over the same until the town in which it lies assumed the charge thereof within three years.

Cutting trees upon a public burial-ground for purposes of private profit, without consent of the public authorities having charge of it, is a violation of the Gen. Sts. c. 28, § 12, which provides a penalty for destroying trees within the limits of a place of burial, although the person who cuts them is the owner of the fee of the land, and honestly believes that his acts are lawful.

Hoar, J. This case presents an important and interesting question upon the construction of the statute relating to burial-places. The defendant is indicted for a violation of Gen. Sts. *c.* 28, § 12, which is as follows:

" Whoever wrongfully destroys, impairs, injures or removes a tomb, gravestone, building, fence, railing or other thing, lawfully erected in or around a place of burial or cemetery, or a tree, shrub or plant, situate within its limits, or wrongfully injures a walk or path therein, or places rubbish or offensive matter within a place of burial or cemetery, or commits any nuisance therein, or in any way desecrates or disfigures the same, shall forfeit for every such offence not less than five nor more than one hundred dollars. Upon the trial of a prosecution for the recovery of such penalty, use and occupation for the purposes of burial shall be deemed sufficient evidence of title."

The indictment charges the defendant with unlawfully, wrong-fully and wilfully cutting down, destroying and removing certain trees, within the limits of a public burial-ground in Seekonk. From the report, it appears that this was an ancient burial-ground, consisting of about two and a half acres of ground at the extreme end of a point of land running out into Bullock's Cove, about one third of which was occupied by graves; that the only access to it was over land of the defendant, through several fences or bar-ways, for one hundred rods from the highway, through a way which had always been used for the burying-ground; that the defendant's farm, including the burying-ground, had formerly belonged to the Brown family, into which an ancestor of the defendant had married; that the oldest graves were of the Brown family, and that there were more graves of that family than of any other; but that members of many other families were also buried there, from Seekonk and other towns, and that burials continued to be made there occasionally to the present time. It was admitted that the defendant cut and removed the trees, which were a natural growth of oak and cedar, from among and between the graves.

The defendant's evidence tended to prove that the burial-ground was originally a part of the Brown estate; that the

Brown family first began to bury there, and the practice grad-ually extended to others, but that the ground was not separated from the rest of the farm until his great-grandfather, who owned it, about the year 1800, erected the fence in order to keep his sheep and cattle on the burying-ground; that the fence had ever since been kept up by his grandfather, his father and himself, who had depastured the ground, cut the trees upon it, and cul-tivated parts of it at their pleasure, under a claim of right; and that no one else had exercised or claimed any control over it, until the town assumed it in 1857. There was also evidence that the defendant was careful not to disturb the graves or mon-uments, and that the general appearance of the place was much better than when he took possession.

The presiding judge at the trial ruled that these facts would support the indictment, and furnished no defence against it; but reported the case for the opinion of this court: and the court are all of opinion that this ruling was right, and that the evi-dence supports the conviction.

The statute expressly makes use and occupation for the pur-poses of burial sufficient evidence of title. And without the statute provision, we can have no doubt that the evidence was amply sufficient to prove a dedication to public use as a burial-ground. The questions then arise, What is the extent of the rights which the public thereby acquire? Were the acts done by the defendant an encroachment upon those rights? And was his conduct "wrongful" within the meaning of the law, if he acted under an honest claim and belief that his acts were justi-fiable?

In the first place, we think the devotion of a piece of ground to the purposes of burial includes much more than the mere interment of the remains of the dead. "To bury our dead out of our sight," a suitable provision for the pressing claims of decency and health, is the first, but not the only consideration. "Christians," says Sir Thomas Browne, "have handsomely glossed the deformity of death by careful consideration of the body, and civil rites which take off brutal terminations; and though they conceived all reparable by a resurrection, cast

not off all care of interment. . . . Since they acknowledged their bodies to. be the lodging of Christ, and temples of the Holy Ghost, they devolved not all upon the sufficiency of soul-existence ; and therefore with long services and full solemnities concluded their last exequies." With some religious denominations, the burial of the dead is a sacrament ; and church-yards and cemeteries are consecrated by religious rites. And although it has been said that the Puritan founders of our Commonwealth, in opposition to what they regarded as superstitious observances, conducted funeral services with an austere simplicity, and often chose the most bleak and barren spots as their places of sepulture, yet the whole sentiment of the community has long since changed in this respect; and the refinements introduced by modern taste, have commended themselves to the general approbation. But the feeling which existed, even in early times, in reference to places of interment, is indicated by an act passed in 1660, to the effect that suicides should " be denied the privilege of being buried in the common burying-place of Christians ; " and by a similar regulation made in 1730, concerning persons killed, or capitally punished for killing another, in a duel. And while many ancient burial-places have been very much neglected, and left without the care which seems appropriate and becoming, we cannot doubt that their use for purposes of private profit would at all times have been regarded as incongruous and censurable. They are places devoted not only to the undisturbed repose of the dead, but to the sentiments, affections and tender memories of the living. When the public authorities, entrusted by law with their care and preservation, take charge of them, the right of private persons must thenceforth be limited to acts of preservation and embellishment ; and even these must in some degree be restricted by the opinion of those who represent the general taste and feeling of the community.

The defendant cut the trees to take the wood for his own use, but without the authority or consent of the town having the burying-ground in its charge. Perhaps he thought their removal would not be injurious, or would be an improvement to the

appearance of the place. But he had no right to decide this question. He could not certainly know how far its natural features and capacities may have influenced the choice of those who selected it as a place of burial. The growth of these trees may have been watched with affectionate interest by friends and relatives of the departed, whose last resting-place has been made more pleasant to the imagination of the survivors, by the thought that it might become a resort of birds, and a place for wild flowers to grow; that waving boughs would shelter it from summer heat, and protect it from the bleak winds of the ocean. The fallen leaf and withered branch are emblems of mortality; and in the opinion of many, a tree is a more natural and fitting decoration of a cemetery than a costly monument. The dedication of the land for a public burying-ground was in its nature a dedication to a permanent use; varying in its details according to the ideas and customs of successive generations; but not to be defeated or impaired by the dictates of private caprice.

Such being the nature of the public right, it is manifest that no adverse rights could be established by prescription, through any such use of the land as the defendant and his ancestors have enjoyed. While no objection was made, his acts are to be regarded as permissive, and not inconsistent with the degree of control which the public desired, or its officers and representatives chose to exercise.

Nor can the opinion or belief of the defendant, however honestly entertained, that his conduct was lawful, change the character of the act, or constitute a defence to the indictment. He has intentionally done an act, which is an encroachment upon the rights of the public. The only remedy is by an indictment; and the intention is not an essential part of the offence. If his purpose was merely to try his title, in good faith, and the injury done is trifling, it may avail him in mitigation of the penalty.

*Judgment to be on the verdict.*

*E. H. Bennett,* for the defendant.

*Foster,* A. G., for the Commonwealth.