## Masters v. Commonwealth.

(Decided November 29, 1911.)

### Appeal from Washington Circuit Court.

1. Criminal Law—Mutilating Cemetery Fence.—Where the owner of a farm upon which there was located an old graveyard, inclosed with a loose rock fence, leased the farm to a tenant, who removed a part of the fence without the knowledge or consent of the owner, the latter was not guilty of mutilating the fence of a cemetery in violation of section 1336 of the Kentucky Statutes.

2. Same.—Where a neighbor asked the owner of a farm upon which there was located an old inclosed graveyard, for permission to use some of the rock of the fence, and the owner of the farm responded that so far as he was concerned he had no objection, whereupon the neighbor used the rock, the owner was not guilty of violating section 1336 of the Kentucky Statutes, which makes it an offense for one to wilfully mutilate the fence inclosing a cemetery.

W. C. McCHORD for appellant.

JAMES BREATHITT, Attorney General and THEO. B. BLAKEY, Assistant Attorney General for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

The grand jury of Washington County indicted the appellant, Howard Masters. for the offense of wilfully multilating the fence inclosing a cemetery, in violation of section 1336, of the Kentucky Statutes, which reads as follows:

"Any person who shall wilfully mutilate the graves, monuments, fences, shrubbery, ornaments, grounds or buildings in or inclosing any cemetery or place of sepul-

ture; or shall violate the grave of any person by willfully destroying, removing or injuring the head or foot stone, or the tomb over, or the inclosure protecting, any grave, or by digging into, or plowing over, or removing any ornament, shrubbery or flower placed upon any grave or lot, shall be fined not less than ten nor (more) than one hundred dollars, or imprisoned not exceeding six months, or both, as the jury may determine.''

He was found guilty and fined $75. He prosecutes this appeal, and complains chiefly that the circuit court erred in not peremptorily instructing the jury to find him not guilty.

The evidence shows that in 1907, Masters bought what was known as the ''Joe Hardin Place,'' which is about three miles from the farm upon which he resides. In the fall of 1908, Masters rented the ''Joe Hardin Place,'' to his son-in-law, Austin Clark, for the year 1909. There was an old abandoned graveyard, partly inclosed by a loose rock fence, in an old field on the ''Joe Hardin Place.'' The inclosure was about twenty-five feet square, and was overgrown with briars and underbrush. The only evidence tending to show that any person was ever buried within this inclosure was that of Mrs. Barker, who is 75 years old, and who testified that when she was a child she had heard that some members of the Summers and Helm families had been buried within the inclosure. There never were any tombstones at the graves, so far as any one knew, and when Mrs. Barker first knew the place, probably sixty or more years ago, a rock placed in the ground edgewise at the head and foot of the graves were the only markers. The wall was erected in about 1852, but many years ago a part of the wall had fallen down and had never been rebuilt. At the time Clark rented the place from Masters, two sides of the wall had fallen down, the rock was scattered over the ground, and it appeared that the place had been, at some former time, used as a hog pen. Soon after Clark rented the place he took some of the rock, without the knowledge or consent of Masters, and used it in walling up a pool upon the place. After he had removed and used the rock he spoke to Masters about it, and Masters responded that so far as he was concerned he had no objection.

Shortly thereafter Ben Hardin, a son of Joe Hardin, the former owner of the place, wanting some rock, went to Masters and asked permission to remove and use the

rock of the old wall; whereupon Masters told Hardin that he had no objection so far as he was concerned. Whereupon Hardin removed the rocks from where they were to his own farm and used them.

There is no contradiction whatever in the testimony as to the taking of the rock, or as to the part that Masters had in it. It was admitted by all the witnesses who testified upon this subject, that the most Masters had done was to say that he had no objection so far as he was concerned. The Commonwealth prosecuted the case upon the theory that Masters was guilty because he owned the farm, and approved of or consented to the removing of the fence.

If it was unlawful for Clark and Hardin to remove the fence which inclosed this place of burial, appellant could only be liable for the offense committed by them on the ground that they, or one of them, acted as his agent. The evidence, however, wholly fails to show that either Clark or Hardin was acting as the agent of Masters when they removed the fence. On the contrary, it is admitted they were acting solely for themselves.

In support of the verdict appellee relies upon Commonwealth v. Bottom, 140 Ky., 212; but, clearly the principle of that decision has no application here. Bottom sold whiskey through the hands of his agent, Bonta, in violation of a local option statute, and the court properly held that when Bottom did the unlawful act by another, he stood, in law, just as if he had done it himself. But, in the case at bar, neither Clark nor Hardin was acting as the agent of Masters. Masters did not remove the fence either in person or through an agent.

The circuit judge should have sustained appellant's motion to peremptorily instruct the jury to find the appellant not guilty; and, for his failure to do so, the judgment is reversed for further proceedings.