## Cave Hill Cemetery Company v. Gosnell, et al.

### (Decided December 19, 1913).

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Cemeteries—Ground Enclosing Not Subject to Lien for Street Construction.—The ground enclosed in a cemetery graded for

burial lots and set with shrubbery is not subject to a lien for the cost of constructing an adjoining street.

2. Cemeteries—Funds of Not Subject to Claim for Street Construction.—The funds in the hands of the cemetery company arising from the sale of burial lots and dedicated to the keeping up and improving of the cemetery can not be subjected to such a claim.

J. W. S. CLEMENTS, PENDLETON C. BECKLEY for appellee, City.

RANDOLPH H. BLAIN for appellant.

WILLIAM FURLONG for appellees Gosnell, et al.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Reversing.

George W. Gosnell received an apportionment warrant from the city of Louisville against the property of the Cave Hill Cemetery Company for paving with brick a portion of the carriage way of Payne street. The amount of the warrant was $1,115.49. He brought this suit against the Cemetery Company to subject the abutting land to its payment. The Cemetery Company answered in substance that it was a quasi public corporation without stockholders, empowered to conduct a cemetery, not held for private or corporate profit; that all of its lands and property were held and used under perpetual trust for cemetery purposes; that a part of the property sought to be subjected was occupied by the United States National Cemetery; that the enforcement of the lien would be a violation of the general statutes of the State and the acts of Congress prohibiting the violation of graveyards; that by an act of March 9, 1854, it was provided that the corporation might acquire by gift, devise or purchase not exceeding 300 acres of land, and that all lands acquired by it should be perpetually held and used for the purposes of a rural cemetery; that by an amendment to this act, it was authorized to sell to purchasers burial lots and issue to them certificates vesting in them the right to use the lots as a burial place for the· dead, but not to be subject to execution or in any manner liable for the debts of the purchaser; that all the lands in the cemetery grounds should be forever exempt from taxation; that one or more soldiers of the United States were buried on the land set apart to the United States National Cemetery; that the land sought to be subjected lies wholly within the grounds of the cemetery which under the charter and

deed from the city of Louisville is to be perpetually held and used for a cemetery; that the grounds are enclosed by a permanent wall 13 inches thick and nine feet high made of vitrified brick laid in cement; that the land sought to be subjected has been graded and prepared for use as burial lots; that shrubbery, trees and ornamental plants have been set out and are growing thereon; that some graves are upon the land, and that the land cannot be lawfully used or occupied by a purchaser without injuring the wall enclosing the cemetery or interfering with or mutilating the grave or graves and gravestones included in it, or without destroying the only entrance to the cemetery from Payne street; that over 43,000 of the dead are buried in the cemetery, and that an entrance into it from Payne street is necessary for the proper use and maintenance of the cemetery; that by reason of the premises the city has no power to make the cost of the improvement of Payne street a charge upon the abutting property used as a cemetery or to subject the property, or any part thereof, to sale. The plaintiff demurred to the answer. The circuit court overruled the demurrer to the answer, but intimated that though the land could not be subjected, the cemetery company might be required to pay the apportionment warrant. There was an issue between the parties as to how much of the cost of building the street should be apportioned to the cemetery company, but this was settled by an agreed order by which Gosnell recovered of the city of Louisville $595.32; and it was agreed that the balance of the warrant, to-wit, $520.17, was the correct proportion of the contract price which should be calculated against the land of the Cave Hill Cemetery Company; but it was stipulated that this judgment should not operate or be construed in any way as an admission by the company that it or its land or its funds were in any manner liable for the balance of the apportionment warrant. The plaintiff filed an amended petition in which he alleged that the cemetery company had funds on hand more than sufficient to pay the claim. The cemetery company demurred to the amended petition; its demurrer was overruled. It then filed an answer in which it alleged that it was engaged in the improvement and ornamentation of the cemetery, and that it received money from the sale of burial lots, also money from lot owners to be used exclusively in the annual care of their respective lots and graves; that its reve-

nues were sufficient to satisfy its running expenses only by economy, and that all the money it received was dedicated to the care and upkeep and beautifying of the cemetery. The circuit court sustained a demurrer to its answer and entered a judgment whereby he adjudged the plaintiff a lien on the property of the cemetery for $520.17, with interest and cost, excepting out of the judgment the land conveyed to the United States National Cemetery. It was further adjudged that it appearing to the court that the lot of land against which the lien was adjudged is enclosed as part of a burial ground of the dead, the same should not be sold by the commissioner at public sale; but that it appearing that the cemetery company had more than sufficient funds accumulated as a surplus, it was adjudged that it within 20 days pay into court a sum of money sufficient to satisfy the decree. The cemetery company appeals.

In Louisville v. Nevin, 10 Bush, 549, a suit was brought to subject the land of a cemetery to a street assessment. Refusing to subject the property, the court said:

"The chancellor will not decree that to be sold which cannot lawfully be used for the ordinary purposes to which property of a like character is commonly applied, and especially when there is no imaginable beneficial use to which it can be put by the purchaser which would not subject him to punishment under the penal statutes of the State. Section 26, article 17, chapter 29 of the General Statutes reads as follows:

" 'Any person who shall wilfully mutilate the graves, monuments, fences, shrubbery, ornaments, grounds or buildings in or inclosing any cemetery or place of sepulchre; or shall violate the grave of any person by wilfully destroying, removing, or injuring the head or footstone, or the tomb over or the inclosure protecting any grave, or by digging into or plowing over or removing any ornament, shrubbery or flower placed upon any grave or lot, shall be fined not less than ten nor more than one hundred dollars, or imprisoned not exceeding six months, or both, as a jury may determine.'

"If the lot in question was sold, the purchaser could not use it for any of the purposes for which town lots are ordinarily used without subjecting himself to the penalties denounced by the foregoing statute and making the court a *particeps criminis* in his offense. If it be said that the purchaser must take care of himself,

it will be a sufficient answer that the court ought not to offer that for sale which it will not allow to be used by the purchaser for any purpose that can be of the slightest value to him. The city had complete authority to contract for the work, but had no authority to make it a charge on the abutting property, and is therefore liable to the contractor for the price of his work. (Murphy v. City of Louisville, 9 Bush, 189.)''

The statute quoted is still in force and is now section 1336, Kentucky Statutes. In that case it appeared that the lot was filled with graves and that the trustee had not funds in his hands belonging to the trust with which to pay the assessment. It does not appear here that the lot sought to be subjected is filled with graves; but we do not regard this as material, for the reason that the statute protects the monuments, fences, shrubbery and ornaments no less than the graves; and the purchaser would be liable for the same penalties if he disturbed these as he would be if he disturbed a grave. The purpose of the statute is to protect the cemetery and not merely the graves in it. The question came before this court again in Colston v. Eastern Cemetery Co., 12 R., 762. In that case the cemetery company was incorporated in the year 1854, and by its charter was exempt from sale for any cause under an execution or decree, but by an act of March 24, 1882, cemetery property was made liable for assessment for a street improvement in Louisville. This court adhered to the conclusion reached in Louisville v. Nevin, and held the amendatory statute not operative as the charter of the corporation was granted before the act of 1856. It concluded its opinion with these words:

''It must be conceded that in a large city like Louisville the existence of burial grounds becomes a matter of necessity, and if not placed under corporate control, where money may be invested and donated for the purchase and improvement of grounds to be used for cemeteries, the expense for such a purpose would be a public burden, and hence the State is, or should always be, ready to encourage the creation of such corporations, not only to lessen the rate of taxation, but to invest the corporate body with the power to raise such funds as will enable them to beautify and ornament the homes of the dead. This was the object of the charter creating this cemetery, where is found, from the testimony, at the time this action was instituted, nearly 40,000 graves,

and no chancellor should authorize the tax gatherer to invade this territory of the dead to enforce the collection of any assessment made by a State, county or municipality, or take from the faithful trustee the funds set apart from the sale of lots and apply them to such a purpose, when, by the terms of the charter, the land itself is exempt from execution.''

Under these decisions the land of the cemetery company in question cannot be subjected to the apportionment warrant, and is not subject to a lien therefor; for under the construction of the statutes there adopted, section 1336, Kentucky Statutes, must be held as creating an exception out of the statutes giving a lien for street improvements. It cannot be presumed that the legislature intended to create a lien upon property when it declared it unlawful to enter upon it or to disturb it in any way. To hold that the purchaser would violate section 1336 if he took possession of the property is necessarily to hold that the legislature did not intend to create a lien upon it; for it cannot be presumed that it intended a vain thing. The effect of these decisions is that section 1336, Kentucky Statutes, is to be read into the statutes creating the lien on the abutting property; and when it is so read, it necessarily excepts cemetery property out of their operation. If the section of the statute giving the lien had contained as a proviso the words contained in section 1336, this would admittedly be their effect, and the result is the same when by judicial construction they are to be read into it or as qualifying it. The legislature, since these decisions were rendered, has acquiesced in this construction. There is no statute now in force giving the city a right to subject cemetery property, the amendatory act above referred to, not having been brought over into the present statutes. The construction of the statute having been acquiesced in by the legislature, cannot now be disturbed.

It remains to determine if the funds in the hands of the cemetery company may be subjected. To require the cemetery company to pay the apportionment warrant when its land is not subject to a lien would be in effect to make the owner of the property personally liable for the amount sued for. But we have often held that the owner is not personally liable for the cost of a street improvement. (Orth v. Park, 117 Ky., 791; Long v. Barbour Asphalt Co., 151 Ky., 1, and cases cited.) To require the cemetery company to pay the money into

court is only in another form to subject its property to the lien. All the funds in the hands of the cemetery company are held under a trust to maintain the cemetery and to require these funds to be paid out for other purposes is to require the trustee to divert the funds from the trust to which they were dedicated.

In Roe and Lyons v. Scanlon, 98 Ky., 25, a county was indebted to a contractor for the construction of a courthouse, and had set apart a fund for the payment of the debt. Mechanics and material men having claims against the contractor for labor done and material furnished in the erection of the building had given the notice required by the statute, and it was held that they thus acquired a lien upon the fund, although the lien could not be enforced against the courthouse. The same rule upon like facts was applied in Noonan v. Hastings, 101 Ky., 313; Allen Co. v. Fidelity and Guaranty Co., 122 Ky., 833. But these cases have no application here. The county had contracted for the building of the courthouse and had set aside the fund to pay for it. The fund so set aside represented the building, and in giving the laborers and material men a lien upon the fund, no part of it was diverted from the purpose for which it was dedicated. But here the cemetery company has made no contract; it holds the funds in its hands dedicated to other purposes; and these funds do not represent in any way the lots sought to be subjected and have no connection therewith. In those cases there was a personal liability for the price of the building; here there is no personal liability.

It is a sound public policy to protect the burying place of the dead. Families scatter; family burying grounds sooner or later fall into decay, and experience has shown that the only way to protect permanently burying grounds is to have some organization similar to appellant. The purchasers of lots in the cemetery bought them and paid for them under a contract that the money they so paid should be used in protecting, keeping up, and ornamenting the cemetery. This constituted a large part of the consideration. To require this money now to be paid out for other purposes would be to divert the trust fund from the purposes to which it was dedicated and to impair the obligation of the contract. This cannot be done.

We do not see, therefore, that either the land may be subjected to the claim or that the cemetery company

may properly be required to pay it out of the funds in its hands.

Judgment reversed and cause remanded for a judgment as above indicated.