COOPRIDER *v.* STATE OF INDIANA

[No. 27,460.   Filed January 21, 1941.]

*R. V. Tozer,* of Brazil, for appellant.

*Samuel D. Jackson,* Attorney General and *Warren W. Martin,* Deputy Attorney General, for the State.

RICHMAN, J.—Appellant was tried by a jury and convicted on an indictment charging him with "unlawfully, wilfully, mischievously and maliciously" removing a tombstone. This appeal is from a judgment on the verdict assessing a fine.

The only error assigned is the overruling of his motion for a new trial which contains two specifications, first, that the verdict is contrary to law, and, second, that the verdict is not sustained by sufficient evidence. These specifications are discussed together in the briefs, on the hypothesis that if the evidence is insufficient to sustain the verdict it is contrary to law. The statute defining the offense, Acts 1905, ch. 169, § 415, p. 584, § 10-4513, Burns' 1933, § 2498, Baldwin's 1934; is short, reading as follows:

"Whoever wilfully, mischievously or maliciously disfigures, defaces or removes any tombstone, monument, gravestone or other structure erected to perpetuate the memory of any deceased person, persons or event; or whoever wilfully, mischievously or maliciously disfigures, defaces or removes any fence, railing, structure, or any other work in or around any public or private monument, cemetery or burial place, or any tree, shrub or plant therein, shall, on conviction, be fined not less than five dollars ($5.00), nor more than five hundred dollars ($500), to which may be added imprisonment in the county jail not more than six (6) months."

Appellant argues that there is no evidence either that he removed the tombstone, or that it was removed unlawfully, wilfully, mischievously and maliciously.

It appears from the evidence that the body of Larkin Lankford, in 1882, was buried on a 40 acre tract owned by him at his death, and a stone monument in four pieces about eight feet high, with his name and some dates thereon, was placed over his grave, remaining

there until in August, 1939. The site of the grave was then within the town limits of Clay City, in the corner of a lot to which appellant claimed title. The evidence discloses some controversy as to whether the grave was in a tract dedicated as a public cemetery by Lankford's heirs and later quitclaimed by them to appellant's grantor as an abandoned cemetery after the town board of Clay City had ordered it vacated as an unfit place for burial. The body of Lankford had not been removed but the grave had been neglected, the upper part of the monument had fallen, and there is evidence that weeds and briars were growing around the stone. This condition existed on August 9th, 1939, when, from the testimony of Otis Kress, it appears that appellant had a conversation with Kress in which appellant asked Kress to plow the lot and move the tombstone, to which Kress replied that he didn't think he could "pull it." Kress plowed the lot but did not remove the stone.

The testimony of Levi Mishler is the only other evidence in the record as to the act of removal or appellant's connection therewith. Mishler testified on direct examination that on the 11th of August, 1939, he dragged the tombstone off the lot where it was erected. He was asked if he "had a talk with George Cooprider regarding this tombstone before you drug it off," to which he replied "Just a very few words." He then stated the conversation as follows:

"Well, he just asked me if I would go up there and do some work for him. He said he had a team up there that couldn't do the work. He sent a little boy up there with them and he couldn't do nothing with them. I said that I can do the work for you if there is no trouble or anything like that. He said there wasn't, so I just took my team and went up there and done the work."

Mishler testified that nothing else was then said to him about the tombstone. On the 15th of August a further conversation with appellant was detailed by Mishler as follows:

"Well, when he come back and wanted me to go up and work the rest of the time to finish plowing discing and harrowing, I told him, I said, 'now if there is no trouble I can do the work alright.' He said there was no trouble whatever. That is about all he said to me."

Inquiry was made as to his being paid, which he admitted. He then described the method of removal, a part of the monument by the use of the team hitched to a chain fastened around the stone, and "the other piece I shoved." The testimony then continues:

"Where did you take it to?
"I just drug it over—I would call it northeast from there about, I imagine it would be 50 or 75 feet.
"Did you drag all the tombstone over there?
"Yes sir.
"And you say now that you received some pay for that, did you?
"I got pay for it.
"Who paid you for it?
"George Cooprider."

There was no cross-examination and the witness was excused but later recalled and testified as follows:

"I believe you said on direct examination that you had a conversation regarding this monument with Mr. Cooprider; that is, you had a talk with him, didn't you?
"Just a few words."

Then follows testimony that the conversation and act of removal occurred in Clay County.

Appellant did not testify and we are without his version of the conversations.

It is proper to ascertain what must be proved before considering and determining the sufficiency of the proof.

The statute qualifies the act of removal by the words "wilfully, mischievously or maliciously" stated disjunctively, but the indictment charges all conjuctively. It has been held that proof of any one of several acts forbidden and charged conjunctively will support a conviction. *Howard* v. *State* (1921), 191 Ind. 232, 131 N. E. 403. See also Ewbank's Criminal Law, 2d Ed., Sec. 327. We see no reason why this rule does not here apply.

There is no contention that the evidence shows malice in the sense of an evil intent without justifiable excuse. If appellant was guilty, it was because he was intentionally responsible for the doing of a forbidden act, even though done on land which he claimed to own and to have the right to use for farming purposes. It becomes necessary, therefore, to define the word "wilfully" as used in this statute which, it seems, has not been involved in prior criminal appeals to this court.

We are not aided by the Indiana cases on malicious trespass cited by appellant. For ordinary trespass there is a civil remedy. A "mischievous or malicious" intent is the only element that converts an ordinary trespass into a criminal offense and of course must be proved. The words "wilful" or "wilfully" are not found in the trespass statute. § 10-4509, Burns' 1933, § 2489, Baldwin's 1934.

In the civil case of *City of Gary* v. *Gary, etc., Cemetery Assn.* (1917), 186 Ind. 446, 116 N. E. 741, the question was the right to enforce a special assessment for city sewer against land used for a public cemetery. This court, through Myers, J., then said, on page 454:

"If it were shown that such assessment could not be satisfied without desecrating the graves and subjecting the purchaser to punishment under a penal statute of the state (Sec. 2309 Burns' 1914, Acts 1905, p. 584, 679), the assessment should not be sustained."

The court so ruled, indicating the view that any conduct, otherwise lawful and incidental to ownership of the land, which would result in the intentional disturbance of the grave would be a violation of the statute. The opinion discloses, however, that the court also based its decision upon the ground that the Legislature in enacting the special assessment statute, on account of "public policy" could not have "intended that the sepulchre of the dead should be the subject of a lien to be enforced by a foreclosure and sale as other property."

A similar case is *Cave Hill Cemetery Co. v. Gosnell* (1913), 156 Ky. 599, 602, 161 S. W. 980, 982, wherein it is shown that the criminal statute reads as follows:

"Any person who shall wilfully mutilate the graves, monuments, fences, shrubbery, ornaments, grounds, or buildings . . . ."

This statute was held a bar to enforcement of a special assessment because the usual lawful acts of ownership could not be exercised without subjecting the owner to the penalties of the criminal law.

Protection of the sanctity of burial places has been the subject of legislation in other states, among them Vermont, Massachusetts, and North Carolina, as well as Kentucky. In some statutes the words "wilfully" and "maliciously" are coupled by the conjunctive. In others the word "wilfully" alone has been used or some other word like "wrongfully" or, as in North Carolina, "unlawfully and on purpose."

A Vermont case, *Town of Fletcher* v. *Kezer* (1901), 73 Vt. 70, 50 A. 558, is helpful for its definitions. The opinion discloses that one section of a statute created a criminal liability if a person wilfully *and* maliciously injured any fence or other erection on a burial ground. The following section created a civil liability for damages, based however on the finding of guilt under the criminal statute. In an action on the case for damages the trial court found that:

" '. . . he removed said wall for said purpose wilfully and without authority from the plaintiff or any one else so to do; but there was no evidence tending to show that he maliciously removed said wall as aforesaid, and we do not find that said act was done maliciously.' "

The court said the civil action did not lie because (50 A. at page 558) :

"In the absence of a finding that the act was maliciously done, the action cannot be maintained. In order to maintain an action upon the statute, the injury must not only be willful, that is, intentional and by design, as distinguished from that which is thoughtless or accidental, but it must, in addition, be malicious. *Commonwealth* v. *Williams*, 110 Mass. 402. It does not follow from the fact that an act is willfully done that it is maliciously done. One may do an act willfully and be free from malice, but he cannot do an act maliciously without doing it willfully. *State* v. *Robins*, 66 Me. 324. If one does an act intentionally and without authority, it may be found that the act was willfully done, but such a finding is not equivalent to a finding that the act is done maliciously . . ."

In *Commonwealth* v. *Viall* (1861), 84 Mass. 512, defendant was charged with wrongfully and wilfully cutting down trees on a burial ground in violation of a statute which stated that "whoever wrongfully destroys . . ." etc. is guilty. Conceding that he acted under an honest claim of right and belief that his

acts were justified, the conviction was sustained, the court saying (p. 516):

"He has intentionally done an act which is an encroachment upon the rights of the public. The only remedy is by an indictment; and the intention is not an essential part of the offense."

Cases are collected in 11 C. J. p. 66, § 42, and 14 C. J. S. p. 98, § 37, where it is said:

"The intent is usually an important element of such offenses, but where one intends the wrongful act prohibited, other good intention will not avail him."

One of these cases, *Masters* v. *Commonwealth* (1911), 145 Ky. 611, 140 S. W. 1021, where a conviction was reversed, is helpful because of similarity, but not identity, with the facts in the case at bar. The statute quoted from *Cave Hill Cemetery Co.* v. *Gosnell, supra,* was involved in this prosecution. In 1907 the defendant had bought land on which the graveyard in question was located. The yard was about 25 feet square, enclosed by a loose rock fence. The fence was down, the yard abandoned and overgrown. Defendant rented the land to Clark who took some of the rock from the fence without defendant's knowledge and used it to wall up a pool. Defendant later learned of Clark's actions and voiced no objection. Later Hardin asked defendant if he could remove and use some of the old rock, and defendant said that he had no objection. It was held that defendant was not guilty of wilfully mutilating the fence. The persons who took the rock were not his agents but acted in their own behalf. All the defendant ever said, when asked for rock, was that so far as he was concerned he had no objection. The court said upon evidence such as that a jury could not find him guilty of wilfully mutilating the fence.

While in the Kentucky case the court found no evidence of agency on the part of the persons who did the physical acts of removal, the facts in that respect here shown are that appellant employed Kress to remove the tombstone which task he did not perform, and that, within two or three days thereafter, appellant had a conversation with Mishler concerning the tombstone after which Mishler did remove it and was paid therefor by appellant.

There is some significance to be attached to the words used by Mishler in his conversation with appellant:

"I can do the work for you if there is no trouble or anything like that."

It is difficult to see how there could be any "trouble" involved in an ordinary job of plowing, discing, and harrowing. Inasmuch as the conversation was concerning the tombstone, it may be inferred that he feared "trouble" because of its removal and was reassured on that score by appellant.

From the evidence in this case we believe the jury might fairly draw the inference that Mishler, who performed the act of removal, was employed and paid by appellant to do that act, forbidden by the statute, and that he intended the thing to be done which was done at his direction. Under the law, and upon the issue here involved, his good faith was immaterial.

We do not find evidence lacking on any essential element of proof. While the evidence is meager and in some respects circumstantial, in our opinion it is sufficient to sustain the verdict.

The judgment is affirmed.

NOTE.—Reported in 31 N. E. (2d) 53, 132 A. L. R. 553.