THE MAYOR AND COUNCIL OF WILMINGTON, a municipal corporation of the State of Delaware, Plaintiff, v. CATHEDRAL CEMETERY COMPANY OF WILMINGTON, DELAWARE, a corporation organized by Act of the General Assembly at Dover, Delaware, March 10, 1881, Defendant.

(*June* 22, 1954.)

Herrmann, J., sitting.

*William F. Lynch, II*, Assistant City Solicitor, for the plaintiff.

*Stewart Lynch* and *Alfred R. Fraczkowski* for the defendant.

Superior Court for New Castle County, No. 800, Civil Action, 1953.

Herrmann, J.:

The plaintiff seeks determination of the validity of sewer and paving assessment liens upon land owned by the defendant at 12th and Madison Streets in Wilmington. The sewer assessment was made in 1900 and the paving assessment was made in 1922. Prior to the commencement of this action, no attempt has ever been made to enforce the assessments.

In 1852, a portion of the land here involved was conveyed to the Roman Catholic Bishop of Philadelphia in trust "for the use of the Roman Catholics of the Parish of Wilmington in the State of Delaware as and for a cemetery or place for burying their dead." The remaining portion of the land was conveyed to the Roman Catholic Bishop of Wilmington in 1870. During the years, title to the combined properties was conveyed from Bishop to Bishop until title was vested in the defendant corporation in 1953.

From 1852 on, all of the land here involved was used exclusively as a cemetery on a non-profit basis. It appears that, generally speaking, the cemetery was divided into family lots. By 1880 all of the lots in the cemetery had one or more bodies buried therein although all of the grave sites in each lot were not fully utilized. The defendant corporation was created in 1881 for the purpose of acquiring and operating additional cemetery grounds to supplement the inadequate space then re-

maining at 12th and Madison Streets for the burial of the dead of the Roman Catholic Faith. After the organization of the defendant corporation in 1881, burials in the cemetery here involved were restricted to members of families holding lots therein. There have been no burials in the cemetery since 1900 except in eleven instances, five of which were subsequent to 1915.

In 1953, legislation was enacted to permit the defendant to remove all bodies interred in the cemetery here involved. See 49 *Del. Laws*, Ch. 33. It appears that this development precipitated this action to enforce the assessment liens which have appeared of record against the property since the assessments were made.

Three governing factors emerge from the stipulated facts and pertinent statutes:

1. At the time of the assessments in 1900 and 1922, the cemetery was filled with graves to such extent as to make it impossible to use any portion of the land for any purpose except sepulcher without violating the then-existing graves or destroying the surrounding cemetery grounds.

2. The sole means of enforcing the assessments was by public sale of the land assessed. See 19 *Del. Laws*, Ch. 209; 29 *Del. Laws*, Ch. 122.

3. A sale of the land to enforce the assessments, under the circumstances existing in 1900 and 1922, was impossible under law.[1]

---

[1] 3 *Del. Laws*, Ch. 170, as amended, 11 *Del. C.* § 421, provides:

"Whoever wilfully—(1) destroys, mutilates, defaces, injures or removes any tomb, grave stone, monument or other structure placed in any cemetery or grave-yard appropriated to and used for the interment of human beings within this State; or (2) injures, destroys or removes any fence, railings or other work for the protection or ornament of such place of interment; or (3) destroys, cuts, breaks or removes any tree, shrub or plant within the limits of the places of interment; or (4) opens any tomb, vault or grave within the same and clandestinely removes or attempts to remove any body or remains therefrom, shall be fined not more than $200 or imprisioned not more than two years, or both".

 I am of the opinion that the foregoing factors necessarily give rise to the implication that the Legislature intended a cemetery, practically filled with graves, to be exempt from special assessments for local improvements.

 The plaintiff has conceded that an unenforceable assessment is an invalid assessment. It has been stated that no case has been found upholding an assessment that could not be enforced. See 71 *A. L. R.* 328; 48 *Am. Jur.* "Special or Local Assessments" § 100. On the other hand, it has been held that where the sole means of enforcing an assessment for local improvements is by sale of a cemetery property and such sale is impossible under the law, it follows by necessary implication that the Legislature intended such cemetery property to be exempt from assessment. See *Cave Hill Cemetery Co. v. Gosnell,* 156 *Ky.* 599, 161 *S. W.* 980; *Woodmere Cemetery Association v. City of Detroit,* 192 *Mich.* 553, 159 *N. Y.* 383; *City of Gary v. Gary Oakhill Cemetery Association,* 186 *Ind.* 446, 116 *N. E.* 741; *Jones v. Lacey,* 220 *Ala.* 390, 125 *So.* 635; *cf., In re Union Dale Cemetery Company,* 227 *Pa.* 1, 75 *A.* 835; *Proprietors of Mt. Auburn Cemetery v. Board, etc., of City of Cambridge,* 150 *Mass.* 12, 22 *N. E.* 66, 4 *L. R. A.* 836; see *Annotation* at 71 *A. L. R.* 322, *et seq.*

The reasoning of the Court of Appeals of Kentucky in *Cave Hill Cemetery Co. v. Gosnell, supra* [156 *Ky.* 599, 161 *S. W.* 983] seems irrefutable. After referring to a penal statute quite similar to ours, which would prevent a purchaser of cemetery lands, if sold to collect assessments, from disturbing the graves, shrubbery or other ornamentation or, in fact, from making any valuable use of the property, *Ky. St.* § 1336, the Court there stated:

"It cannot be presumed that the Legislature intended to create a lien upon property when it declared it unlawful to enter upon it or to disturb it in any way. To hold that the purchaser would violate section 1336 if he took possession of the property is necessarily to hold that the Legislature did not intend to create a lien upon it, for it cannot be presumed that it

intended a vain thing. The effect of these decisions is that section 1336, *Ky. St.*, is to be read into the statutes creating the lien on the abutting property, and when it is so read it necessarily excepts cemetery property out of their operation. If the section of the statute giving the lien had contained as a proviso the words contained in section 1336, this would admittedly be their effect, and the result is the same when by judicial construction they are to be read into it or as qualifying it."

In this connection, the plaintiff places principal reliance upon *Hollywood Cemetery Assn. v. Powell,* 210 *Cal.* 121, 291 *P.* 397, 71 *A. L. R.* 310. That case is clearly distinguishable for two reasons: (1) the unused portions of that cemetery were so situate that they could be sold and utilized for purposes other than sepulture without violation of law; and (2) that cemetery was operated for profit. In the *Hollywood* case, the Court reviewed the *Cave Hill* case and other cases cited herein and, without criticism, distinguished them primarily upon the two grounds above mentioned. The instant case is to be distinguished from the situation in the *Hollywood* case in the same manner and to the same extent as the *Hollywood* case was distinguished from the *Cave Hill* case and other cases cited *supra.*

▉ The result reached here is not novel. In the charters of cemetery corporations, the Legislature has frequently granted exemption from "taxation or assessment". Such exemption has been held to include assessments for local improvements. See *Mayor and Council of Wilmington, etc. v. Riverview Cemetery Company,* 8 *W. W. Harr.* 182, 190 *A.* 111. Indeed, the defendant corporation itself was granted such charter exemption when it was created in 1881. See 16 *Del. Laws,* Ch. 482. Thus, this case never would have arisen if the subject land had been conveyed to the defendant corporation prior to the improvements. Similar exemption from local assessment was granted by the Legislature when it created The Wilmington and Brandywine Cemetery, 10 *Del. Laws,* Ch. 27, The All Hallows Cemetery 14 *Del. Laws,* Ch. 487, The Holy Cross Cemetery, 14 *Del. Laws,* Ch. 491, The Bridgeville Cemetery Company, 15 *Del. Laws,*

Ch. 129, The Silverbrook Cemetery Company, 20 *Del. Laws,* Ch. 82, The Riverview Cemetery Company, 14 *Del. Laws,* Ch. 486, and others. This pattern of action by successive Legislatures facilitates the conclusion that, in enacting statutes for local assessments, the Legislature did not intend to subject occupied cemeteries to the enforcement provisions of assessment statutes and, thus, intended to exempt them.

The plaintiff contends that, now in 1954, the cemetery is being vacated and the land may now be exposed to public sale to enforce the ancient assessments. This fact does not aid the plaintiff. These assessments have not been in some twilight zone these many years awaiting the moment when they would quicken into life by the disinterment of the bodies of the dead. In 1900 and 1922 respectively, the assessments were either valid and enforceable or invalid because unenforceable and if they were invalid then they are invalid now.

The assessment statutes do not contemplate long waiting periods prior to enforcement. The sewer assessments statute provides that if the assessment shall remain unpaid at the end of *one year* after the assessment is certified as due and owing, "it shall be the duty of the Mayor of the city to issue his warrant" commanding enforcement of the assessment by public sale. See 19 *Del. Laws* Ch. 209, Sec. 5. The paving assessment statute likewise contemplated prompt enforcement by public sale after the expiration of *three years* from the date of the bill for assessment. See 29 *Del. Laws,* Ch. 122, Sec. 9.[2] Hence, it is apparent that it was not the intention of the Legislature that valid assessments should lie dormant for more than half a century awaiting the development of circumstances propitious to their enforcement.

I am of the opinion that the validity of the assessments here involved must be adjudged as of the dates of their making; that, as of those dates, it was a practical impossibility to

[2]This period was reduced to one year by 37 *Del. Laws,* Ch. 136.

enforce such assessments under law; that, as of the dates of the assessments, the subject cemetery was exempt by necessary implication; and that, therefore, the assessments were invalid when made and are invalid now.

Accordingly, it will be ordered and adjudged that there is no valid sewer lien or paving lien on the subject property.