CASE 98.—ACTION BY MRS. ESTHER MEYERS AGAINST F.
H. CLARK, W. C. DUDDENHAUSER & W. R. MIL-
WARD FOR DAMAGES FOR MUTILATING THE
DEAD BODY OF HER DAUGHTER.—February 20.—
Rehearing May 11.

## Meyers v. Clarke, Duddenhauser, &c.

Appeal from Fayette Circuit Court.

WATTS PARKER, Circuit Judge.

Judgment   for   defendants.   Plaintiff   appeals.
Affirmed.

1. Appeal—Questions Reviewable—Necessity of Showing Nature
of Excluded Evidence—The refusal of the court to allow a
witness to testify because he had violated a rule excluding
the witnesses from the court-room cannot be reviewed, where
the record does not show what the testimony of the witness
would have been.

2. Dead Bodies—Unauthorized Autopsy—Physicians who made an
autopsy without the consent of the persons entitled to the
custody of the body were liable in damages therefor, unless
the autopsy was made in good faith to ascertain the cause
of death in order to obtain a burial certificate from the board
of health.

3. Same—Liability of Undertaker—An undertaker, who has taken
charge of a body at the request of persons entitled to its
custody, and who afterwards permits physicians to make an
unauthorized autopsy, is jointly liable with the physicians.

4. Same—Damages—In an action against physicians for wrongfully
making an autopsy on the body of plaintiff's daughter, the
measure of damages was such sum as would fairly compen-
sate plaintiff for any suffering caused her by reason of the
fact that the body was dissected or mutilated.

### REHEARING.

5. Municipal    Corporations—Ordinance—Validity—Under    Ky.

Stats., 1903, section 3058, authorizing the general council of a city to establish and enforce quarantine laws and regulations to prevent the introduction and spread of contagious diseases in the city, to regulate hospitals, infirmaries, etc., within the city, and to secure the general health of the inhabitants of the city, a city has power to pass an ordinance providing that no person dying in the city shall be interred in a city cemetery without a burial permit from the board of health.

6. Health—Board of Health—Powers—A city board of health is authorized to make reasonable regulations as to the issuance of permits for burial in a cemetery within the city of persons dying in the city.

7. Same—Regulations—Validity—A city board of health regulation, requiring the certificate of an attending physician as to the cause of the patient's death as a prerequisite to the issuance of a burial permit for burial in a city cemetery of a person dying in the city, is not unreasonable.

ALLEN & DUNCAN for appellant.

(No brief in the record.)

J. D. & G. R. HUNT for appellee.

POINTS AND AUTHORITIES.

1. The stenographer's transcript is not part of the record. (Session acts 1902, page 230; Southern Railway Company in Kentucky v. Thurman, 25 Ky. Law Rep., 804; 76 S. W., 499.)

2. The appellee, W. R. Milward, did not induce, cause, consent to, or have anything to do with the autopsy complained of.

3. An attending physician, who is also an officer of a public hospital, is justified in holding an autopsy on the body of a patient in a public hospital, who dies in said hospital, for the sole purpose and in good faith of ascertaining the cause of death of such patient, when the death of such patient is sudden, unexpected and mysterious, and when the cause of such death is not known and cannot be ascertained by any medical skill, when the ordinance of the city, in which said hospital is situated, the rules of the board of health of said city, and the rules of said hospital impose upon him the duty of stating said cause of death in writing as a condition precedent to the removal of said body from the city, or of its burial in or within two miles of said

city, and such physician is not liable in damages to the next kin of said decedent, if said autopsy is conducted in a skillful, scientific and decent manner, with due regard to the sex of said decedent. (Cook v. Walby, 27 Pac. Rep., 950; 9 Cyc., 988-9; Title Coroner; Young v. College of Physicians and Surgeons, 81 Md., 358; s. c. 31 L. R. A., 540.)

OPINION OF THE COURT BY JUDGE CANTRILL—Affirming.

On November 28, 1902, Alice Roberts was admitted to the Good Samaritan Hospital in Lexington, Ky., as a charity patient having been sent there by the city. The record shows that she had been sick but a few days, but it does not show what was the matter with her before her admission into the hospital. Suddenly, next morning, between half past 6 and 7 o'clock, she died. Her parents were notified of her death. It seems that her stepfather, James Meyers, went to Milward's undertaking establishment and employed him to go to the hospital and take charge of the body, and remove it to the girl's home, and prepare it for burial. The undertaker, or one of his assistants, went to the hospital, and was told that the body was in the morgue, and after conference with the interne at the hospital he went to the home of the girl and notified her stepfather, James Meyers, that the body was in bad condition, and that speedy burial was necessary, and suggested that the doctors at the hospital had to make an autopsy to ascertain the cause of her death in order to procure a burial permit from the board of health. Before he could report to the doctor in charge of the hospital what the stepfather, James Meyers, had said, they (Dr. Duddenhauser and Dr. F. H. Clarke)

took it for granted that there were no objections because of the silence of Milward, the undertaker's assistant, and proceeded to hold an autopsy, which autopsy disclosed the fact so they say, that she died from perforation of the bowels, caused by typhoid fever. It appears that the autopsy was made in the usual way, and there was no unnecessary disfigurement of the body so far as disclosed by the testimony. Between 12 and 2 o'clock the body was turned over to the undertaker's assistants, who placed it in what is called an undertaker's basket, and removed it to her home, where it was laid out, and the neighbors gathered in and prepared the corpse for burial. The undertaker brought the coffin to the house that afternoon or evening, and she was placed in the coffin. It does appear from the proof, however, that neither the stepfather nor mother, after being notified of the girl's death, went to see the corpse at the hospital, nor sent any clothing to be placed upon the body. The doctors and undertaker both testified that the body was in bad condition by reason of the swelling of the bowels and collection of gases inside, and, as they called it, there was an overflow or discharge of putrid matter from her mouth and nostrils. The plaintiff sues the undertaker and doctors for disfiguring the body and for holding the autopsy without her consent. On the trial of the case, all the witnesses—both for the plaintiff and defendants —were sworn, put under the rule, and excluded from the courtroom; but it seems that the plaintiff's witness, James Meyers (stepfather of the girl), stayed in the courtroom and heard the statement of the case made by the attorneys pro and con. Upon the introduction of testimony the plaintiff called

James Meyers (stepfather of the girl), and his testimony was objected to because he had remained in the courtroom and heard the statements of the attorneys, and the court sustained that objection, and refused to let James Meyers testify. This ruling was excepted to at the time by the plaintiff. There is no avowal, or anything, in the record which discloses what James Meyers would testify about. Inasmuch as this record does not show what the witness would testify to, this court cannot say that the appellant was prejudiced by the refusal of the court below to allow him to testify; and therefore the record is not so presented as to raise the question whether the court erred in refusing to allow him to testify. Upon the trial of the cause a verdict was rendered by the jury for each and all of the defendants. Motion was made for a new trial, which was overruled by the lower court, and she institutes this appeal.

The court gave several instructions, each of which were objected to and excepted to at the time; but upon an examination of these instructions we do not discover any error. There is nothing in the record to show that the undertaker or the doctors purposely mutilated or disfigured the body, but that their sole purpose was to comply with the rule of the board of health, so as to enable the undertaker or doctors in authority to procure a burial certificate, which was required by the board of health under the charter and ordinances of the city of Lexington. We see no reason in law or otherwise why the city authorities or the board of health should not make the requirements as above set out.

We are of opinion that the court gave the jury

proper instructions, which are as follows: "The
jury should find for the plaintiff, unless the jury
believe from the evidence that the defendants Clarke
and Duddenhauser, in making the autopsy upon the
body of Alice Roberts, did so for the sole purpose
in good faith of ascertaining the cause of the death
of said Roberts, in order that they, or one of them,
might be able to correctly give a certificate stating
the cause of the death of said Roberts for the
purpose of obtaining a permit for the burial of the
body of said Roberts; and the jury should also find
for the plaintiff, unless they believe from the evi-
dence that said autopsy was properly and decently
performed with due regard to the sex of said
Roberts, and without making any unnecessary
incisions into, or mutilation of, the body of said
Roberts. If the jury find for the plaintiff, they
should find against the defendants Clarke and
Duddenhauser. If they find against said two
defendants, they should also find against the defend-
ant Milward, provided the jury further believe from
the evidence that said Milward, after having custody
of the body of said Roberts, consented that an
autopsy might be made upon said body, and volun-
tarily gave to said Clarke or Duddenhauser or both
of them, permission to make said autopsy. If the
jury believe, from the evidence, that the defendants
Clarke and Duddenhauser, in making the autopsy
upon the body of Alice Roberts, made said autopsy
decently, with due regard to the sex of said Roberts,
making no unnecessary incisions into or mutilation
of the body, and that said autopsy was made in good
faith for the purpose of ascertaining the cause of the
death of said Roberts, in order that such a certificate

might be given as would procure a permit for the burial of the body of said Roberts, the jury should find for the defendants. The jury should find for the defendant Milward, no matter whatever fact may be proved in this case unless the jury believe from the evidence that, after Milward had the custody of the body of Alice Roberts, he voluntarily consented to the making of an autopsy upon said body. If the jury find for the plaintiff, they should find for her in such sum in damages, not excedeing $5,000, as will fairly compensate her for any suffering caused her by reason of the fact that the body of Alice Roberts had been dissected or mutilated. If the jury find for the plaintiff, they may find against all of the defendants, or they may find against Clarke and Duddenhauser, and find for Milward, as the facts in this case, under the law given in these instructions, may warrant them.''

Nothing appears in the record that the doctors who made the autopsy, or the undertaker, did anything to outrage the feelings of the girl's mother or stepfather, or any of her kin whose duty it was to take charge of the remains and prepare it for burial; and it would seem that, if anybody was amiss in their duties in regard to the interment of the girl's remains, it was the stepfather and mother, who virtually abandoned the corpse and left it in the hands of the hospital authorities to get rid of it as best they could.

We think the judgment of the lower court ought to be affirmed, and it is so ordered.

Response to petition for rehearing, May 11.

CHIEF JUSTICE HOBSON.

By section 3058, Ky. Stats., 1903, the general council authorized to establish and enforce quarantine laws and regulations to prevent the introduction and spread of contagious diseases in the city, to regulate hospitals, infirmaries, etc., within the city, and so secure the general health of the inhabitants of the city. Under this provision of the statute the city had power to pass the ordinance to the effect that no person dying in the city should be interred in the city cemetery without a burial permit from the board of health. The board of health was authorized to make reasonable regulations as to the issuing of such permits, and it was not an unreasonable regulation to require the certificate of the attending physician as to the cause of the patient's death. Under all the circumstances of this case, and in view of the necessity of speedy action, we do not see that there is any ground for disturbing the judgment of the Circuit Court.

Petition overruled.