## Louisville Gelatine Works v. Minton.

(Decided October 17, 1911.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Third Division).

Personal Injury—Assumption of Risk—Question for Jury.—While it is true that the servant assumes the risks ordinarily incident to the employment in which he is engaged, yet if the master orders him to stand in a particular place and perform the work in a manner not usual, or customary, and the servant is injured, he may recover of the master, unless the danger was so obvious that an ordinarily prudent person would not have undertaken the work even though ordered by the master to do so and this is a question for the jury.

O'NEAL & O'NEAL, BROWN & NUCKOLS for appellant.

J. C. DODD, EDWARDS, OGDEN & PEAK for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Appellee, Emmett Minton, a young man who had almost reached his majority, fell into a wooden vat in the establishment of the Louisville Gelatine Works. His feet and legs were badly scalded, and he brought this action to recover damages. The jury returned a verdict in his favor for $750. From the judgment predicated thereon this appeal is prosecuted.

The only error relied upon is the failure of the trial court to direct a verdict in favor of the appellant.

The evidence discloses that appellee went to work for appellant on January 28th, 1909. On the first day he was engaged in the particular duty of cutting tendons from the feet of dead animals. On January 29th he resumed this work. About ten o'clock he was directed by his superior, Milton Conrad, to go to work at the shin bone vat and throw bones from one end to the other, from whence they were to be taken and removed by another employe. At the place where appellee was injured there are two vats, one called the hoof tank, the other the shin bone tank. They are about six feet long and four feet wide. The hoof tank was set on the floor, while the shin bone tank was set on legs; thus the shin bone tank was considerably higher than the hoof tank. Appellee testifies that Milton Conrad directed him to get a pitch fork and stand on the edge of the hoof tank for the purpose of throwing bones from one end of the shin bone tank to the other. While he was in this position his feet slipped and he fell into the hoof tank, which was filled with boiling water, and thus his injuries were received.

A former superintendent of the establishment testifies that for the six or seven months he was in the employ of the appellant he always drew off the hot water from the bones in the shin bone tank and turned cold water on them for a sufficient length of time to cool them off. This was the ordinary way in which the work was done.

Appellant's witness, Milton Conrad, testified that he did not direct appellee to get a pitch fork and stand upon the hoof tank, but thoroughly instructed him to cool the shin bone tank by the use of the hose.

Appellee admits that the water in the hoof tank was very hot, and that the edge of the tank on which he stood was wet, and that he slipped because it was wet.

Counsel for appellant contend that this case falls within the rule laid down in Wilson v. Chess & Wymond Co., 117 Ky., 567. There plaintiff's right to recover was predicated on the failure of the defendant to furnish him a reasonably safe place in which to work. In that case there was a large tank filled with boiling water. Around the tank ice had formed. This court held that conditions were openly visible to plaintiff, and he had only to use his eyes, his most common experience, and his earliest instincts to fully appreciate the danger of the position. In that case, however, there was no positive direction by the master to stand in a particular place or to perform the work in a particular way. Having gone

to work without any positive directions as to where he should stand or as to how he should perform the work, and without any assurance of safety, this court held that, knowing boiling water would burn and ice was slippery, he assumed the risks incident to the employment.

For the purpose of considering whether or not a peremptory instruction should have gone, we must take the evidence of appellee as true. The customary way of doing the work was to cool the shin bones off by the use of a hose; no pitch fork was required. Appellee, however, testified that he was required to get a pitch fork, and was directed where to stand. The rule applicable to the facts of this case is that when the master directs an employe to enter a dangerous place to labor, and to perform the work in a manner not usual or customary, and the employe complies with that order and is injured, he may recover from the master, unless the danger was so obvious that an ordinarily prudent person would not have undertaken the work, even though ordered by his master to do so. This is a question for the jury to determine. Runions v. Keller & Brady Co., 141 Ky., 827. While it is true that appellee knew that if he fell into boiling water he would be burned, and also knew that the edge of the tank where he stood was wet, and further that he testified this was what caused his feet to slip, yet the probability that because of the dampness of the edge of the tank he would slip was not so great as to justify us in holding, as a matter of law, that the danger was so obvious that a person of ordinary prudence would not have undertaken the work. We, therefore, conclude that the trial court properly submitted the case to the jury.

Judgment affirmed.