## Adams v. Cabin Branch Coal Co.

(Decided March 16, 1912.)

### Appeal from Pike Circuit Court.

1. Master and Servant—Injury to Servant.—A servant of a coal company who went upon an incline in obedience to the orders of his superior, and was there hurt by being run over by a car, cannot recover against the coal company for his injury when it was due not to any negligence on the part of the boss who gave the order but the negligence of a fellow servant.

2. Signals to Fellow Servant.—The servant at the tipple who gives signals to the man at the drum directing the movement of the cars on an incline is a fellow servant of the man at the drum.

W. H. FLANERY and ROSCOE VANOVER for appellant.

AUXIER, HARMON & FRANCIS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Affirming.

Howard Adams was in the employment of the Cabin Branch Coal Company. The Company operated a coal mine, also an incline and coal tipple by means of which the coal from the mine was loaded on the railroad cars. Small cars called in the record "monitors" were run on the incline; these cars took the coal up to the tipple from the mine and when they were unloaded were brought back to the mouth of the mine on the incline;

they were operated by a drum which was at the foot of the incline, a cable running from the drum below pulled the cars up and down. Adams worked at the tipple. It was his business to help unload the cars and to give signals to the man at the drum when they were to be moved. The mine was shut down for Christmas in the year 1910; they began work again on December 26. It was a cold morning and things were frozen. After Adams got ready at the tipple for the cars to be moved he signaled to Mims, the man at the drum, to move them. Mims turned the lever for this purpose, but the cable was frozen to the incline, and when he applied the power, he could not move the cars on account of the cable being frozen to the incline. Thereupon the boss who was standing near the tipple and in sight of both Mims and Adams, told Adams to go out on the incline and "shake the cable and it will start." Adams flagged Mims, the man at the drum, to hold, giving the stop signal in the usual way. Then being positive in his mind that Mims had received the signal, he went out on the incline just in front of a car and took hold of the cable. When he broke it loose the car started. As he was on the tressel and very near the car, before it could be stopped it ran over him or upon him. Adams testified that he gave Mims the order to start and the car failed to go; that then he gave him orders to hold, and went out on the tressel; that Mims was in sight of him looking in his face. He said that the boss who told him to go out there and shake the cable loose did not give any signal or say anything after he told him to go out there. Mims testified that Adams gave him the signal to start the car, and when the car would not start he went to the other end of the drum to see what was the trouble with the drum; that he shut his lever off when he left it, and that when he came back thinking the way was clear and having received no other signal, he turned the lever to give it another trial; the car then moved and ran over Adams. Adams brought this suit against the company to recover for his injuries, and at the conclusion of the evidence for him which showed the facts we have stated, the court instructed the jury peremptorily to find for the defendant. The jury having returned a verdict as directed and the court having entered judgment dismissing the petition, he appeals.

We do not see that there was any negligence on the

part of the boss. It is true that he told Adams to go out on the incline and shake the cable loose; but Adams knew that before he did this he should signal to Mims to hold, and he did give Mims the signal to hold. He was the man to give the signals, and it was proper that the man who usually gave signals should give them on this occasion, as Mims would naturally look for a signal to the man whose business it was to give them. It was unnecessary that the boss should also give a signal after Adams had given Mims the hold signal. Adams testified that Mims was looking right in his face when he gave the signal. In Kentucky Distilleries Co. v. Schreiber, 24 R. 2236, relied on for appellant, the foreman directed one servant to run hot water into a mash tub and directed another to run cold water into the same tub. The latter was scalded by the hot water which the other servant turned on. But that is not this case. There the servant that was scalded did not know of the other servant being ordered to turn the hot water on. In this case the man that was ordered to go out on the tressel knew that he had given the start signal to Mims and knew that he was the person to give Mims the hold signal; before he went out on the tressel he did give Mims the hold signal, and his injury was not due to any fault of the boss but to the fault of Mims under the evidence. The case of Louisville Gelatine Works v. Minton, 144 Ky., 834, which is also relied on has no application for the same reason.

There is evidence to show negligence on the part of Mims but under a long line of cases Mims was the fellow servant of Adams. They were both engaged in the business of moving the cars on the incline. Mims ran the cars according to Adams' signal. The running of the cars was their common or joint business, and in conducting this business they were fellow servants. This was expressly held in Dana v. Blackburn, 121 Ky., 706, on facts practically the same as those we have here. (See also L. & N. R. R. Co. v. Brown, 127 Ky., 742; Cooper vs. Oscar Daniels Co. 29 R., 1172; Pitts v. Centers, 30 R., 312; Diebold, etc., v. Wollborn, 122 S. W., 212).

Judgment affirmed.