## Green River Light and Water Company v. Beeler.

(Decided February 7, 1922.)

### Appeal from McLean Circuit Court.

1. Master and Servant—Workmen's Compensation Act—Refusal of Employer to Operate Under Act Deprives Him of Defenses of Contributory Negligence, Fellow Servant and Assumption of Risk. —An employer affected by the provisions of the Workmen's Compensation Act, who does not elect to operate thereunder, is deprived of the defenses of contributory negligence, fellow servant and assumption of risk.

2. Master and Servant—Necessity of Showing Negligence Against Employer Electing Not to Operate Under Workmen's Compensation Act.—Though an employer who elects not to operate under the Workmen's Compensation Act is deprived of the defenses of contributory negligence, fellow servant and assumption of risk, plaintiff, in a suit for personal injuries against his employer, must show that his injuries were caused by defendant's negligence.

3. Master and Servant—Personal Injury—Question for Jury—Sufficiency of Evidence.—In a servant's action for personal injuries alleged to have been caused by defective boiler, evidence held sufficient to make the question of negligenc one for the jury.

4. Damages—Punitive Damages—Right of Recovery.—Punitive damages are not authorized and should never be allowed in any case unless there is evidence tending to show that the defendant acted maliciously, wilfully, or with such gross negligence as to indicate a wanton disregard of the rights of others.

5. Damages—Punitive Damages—Right of Recovery—Trial—Instructions.—In an action for personal injuries alleged to have been caused by the explosion of a boiler, evidence of negligence examined and held not sufficient to authorize an instruction on punitive damages.

E. B. ANDERSON, W. FOSTER HAYES, JOE H. MILLER and FRED FORCHT for appellant.

R. ALEXANDER and G. H. CARY for appellee.

Opinion of the Court by Judge Clay—Reversing.

In an action for personal injuries against the Green River Light & Water Company, J. W. Beeler recovered compensatory damages in the sum of $320.00 and punitive damages in the sum of $4,680.00. The company appeals.

The company was engaged in the manufacture of light, water and ice, and its plant was located on the bank of Green river. The plant was operated by steam power, and the steam was furnished by two boilers, one of which was much larger than the other. The two boilers were connected by two steam pipes through which the steam might pass from one to the other, but only one of these pipes was in use at the time of the accident. The other, a two-inch pipe, was used for connecting the two boilers whenever the ice machinery was in use. The connection was made by opening a valve in the pipe. Three men were regularly employed in the operation of the plant. They were J. C. Epley, the superintendent, Leslie Warren and the plaintiff, J. W. Beeler. It was Beeler's duty to fire the boilers and attend to the other things necessary to be done in the operation of the plant. He usually went on duty about midnight and remained on duty until 10:30 o'clock the following morning. On the morning of August 29, 1919, and while plaintiff was in charge of the plant, the small boiler exploded and plaintiff, who was standing a few feet away, was burned and bruised. The plant was badly wrecked and the boiler itself was blown away. When plaintiff went on duty the boilers were not connected. At that time the pressure in the little boiler was "right at" 100 pounds, and there was very little water in the boiler. The big boiler was three-fourths full of water and the steam pressure was 85 pounds. The safety valves on these boilers were set to let the steam begin to escape at 95 pounds and come to full blast at 100 pounds. After attending to the fires, plaintiff pumped water into the little boiler. A short time thereafter, the pressure in the small boiler had fallen to 90 pounds, and that in the large boiler had risen to 90 pounds. Thereupon plaintiff opened the valve in the two-inch pipe, thus connecting the two boilers. According to plaintiff's evidence, there was a slight depression or indentation in the small boiler. While cleaning out the boiler, he discovered the depression and called the superintendent's attention thereto. Plaintiff further

testified that a few days before the accident the super-
intendent blocked the safety valve on the small boiler
so that it would not work, and that the safety valve was
blocked at the time of the accident. Dan Murphy, who
had been operating steam boilers for about fifteen years,
said that it was dangerous to block the safety valve on
a boiler even if the boiler was connected with another
boiler, as one pop-off valve is not sufficient to take care
of the steam that escapes from two boilers. He also
stated that where an indentation or depression is found
in a boiler, it is weak at that point, and should be imme-
ditely repaired. Otherwise, when the boiler is hot and
cold water strikes the depression, it will cause the boiler
to blow up at any time. R. Johnson, who had been an
engineer for a number of years, testified that it was dan-
gerous to block a pop-off valve so the steam could not
escape through one of the boilers, as each boiler is sup-
posed to let its own steam escape through its pop-off
valve and the valve is not large enought to take care of
the steam from another boiler. E. W. Beauchamp, who
had had thirty-five years' experience with boilers and
engines, said that it was not safe to block a safety valve
on a boiler, even though it was connected with another
boiler, as each boiler should have a safety valve to take
care of its own steam. He was of the opinion that if
there was a bag or slight depression in a boiler, it should
be patched. Even if there was a slight depression, it
would not be safe to use it for any length of time. He
further stated, however, that if a depression was only
three-sixteenths of an inch, a man would hardly notice
that, and he did not think the boiler would be weakened
to amount to anything.

On the other hand, J. C. Epley, the superintendent,
testified that the safety valve on the small boiler was not
blocked at the time of the inspection, but that even if it
was, this would not render the boiler dangerous, as the
steam would escape into the other boiler. He also stated
that the steam would begin to escape from the larger
boiler even before the pressure reached 100 pounds. He
further testified that there was a very slight scale in the
boiler, and that you could not detect it with your naked
eye. C. G. Gilmore, who formerly managed the plant,
testified that the depression was so slight that a man
could not see it without taking a spirit level. In his opin-
ion the boiler was not unsafe for use, as he had worked

around it for four years and would not have been there if he had not thought it was safe. L. S. Tomlinson, a boiler inspector of several years' experience, testified that when he examined the boiler on March 4, 1919, he found a slight depression in the fire shed under the boiler. Its size was three inches one way and three and one-half inches the other, with a depth of about three-sixteenths of an inch. In his opinion it was entirely safe to use a boiler with that much depression in it. If the pressure in each boiler got up to 100 pounds, and they were connected together, the safety valve on the big boiler would take care of the steam from both. On cross-examination he stated that it was not altogether a good proposition to block one of the safety valves and let the steam escape through the safety valve on the other boiler. While not altogether dangerous, he thought it best to have the safety valve repaired rather than blocked.

It is conceded that the company was an employer affected by the provisions of the Workmen's Compensation Act, and that it had not elected to operate thereunder. That being true, it could not avail itself of the defenses of contributory negligence, fellow servant and assumption of risk. Section 4960, vol. 3, Kentucky Statutes. However, to entitle plaintiff to a recovery, it was necessary for him to show that his injuries were caused by the negligence of defendant, and it is insisted that the evidence of negligence was not sufficient to take the case to the jury. In support of this position it is argued that the only witnesses who testified as to the size of the depression in the boiler stated that it was not dangerous, and it cannot be said that the blocking of the safety valve on the small boiler was the cause of the accident, because there was no evidence that the pressure ever reached 100 pounds, or the point at which the safety valve would permit the steam to escape. It was shown that there was an indentation in the boiler, and that the superintendent knew of the indentation. There was further evidence that an indentation was always dangerous and should be repaired. While it is true that there was no direct evidence that the pressure ever reached 100 pounds, the inference that such was the case is not unreasonable, in view of the fact that the firing of the boiler and the heating of the water would naturally produce such a result. Ordinarily boilers do

not explode unless defective or negligently operated, and there being evidence tending to exclude the theory of negligent operation, as well as evidence tending to show that the defects were such as would naturally cause an explosion, we conclude that the evidence was sufficient to make the question of negligence one for the jury.

Whether the instruction authorizing the recovery of punitive damages should have been given presents a more serious question. It is the law in this state that punitive damages are not authorized and should never be allowed in any case unless the evidence tends to show that the defendant acted maliciously, wilfully, or with such gross negligence as to indicate a wanton disregard of the rights of others. Louisville & N. R. Co. v. Wilkins' Guardian, 143 Ky. 572, 136 S. W. 1023. On the question whether the defect in the boiler or the blocking of the safety valve made it dangerous to operate the boiler, the evidence was conflicting. At most, the evidence for plaintiff merely tended to show that it was dangerous to operate the boiler under those conditions. It does not show that the danger was so apparent or glaring as to indicate a wanton disregard of the rights of others, nor can it be said that the superintendent was actuated by malice or ill will towards the plaintiff, for he himself operated the boiler under the same conditions. We therefore conclude that the instruction on punitive damages should not have been given.

Judgment reversed and cause remanded for new trial consistent with this opinion.