## Louisville Cemetery Association v. Downs.

(Decided December 18, 1931.)

774

HAGAN & MIX for appellanlt.

GILBERT BURNETT for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

The Louisville Cemetery Association is a corporation engaged in conducting and maintaining a cemetery or burying ground for colored persons, in or near the city of Louisville, Jefferson county, Ky.

Robert C. Downs was a colored man residing in the city of Louisville on December 1, 1929. His unmarried daughter, Clara L. Downs, who was about 29 years of age, died on December 9, 1929. On the 10th day of December, 1929, Robert C. Downs and other members of his family, and a colored undertaker, John P. Cooper, visited the cemetery of the company and selected a lot known as "a four-grave lot." He then and there purchased a lot which is known as lot No. 49, and so shown on the blue print of the cemetery association.

On December 12, 1929, the remains of his daughter were buried, and it was supposed at the time that her grave was on lot No. 49, but, in preparing the grave, the sexton made a mistake and made it on lot No. 69, which adjoined lot No. 49. The grave was prepared and the remains buried within about three feet of the line of the lots. At the time of the burial, flowers and dirt were piled in the immediate vicinity of the grave, and it was not observed by appellee at the time that the grave was on the wrong lot, or on lot No. 69.

On October 30, 1929, Ben Mansfield Young was buried on lot No. 69. The deed or certificate of title to it was delivered to Lethe Young, the widow of Ben Mansfield Young, on either the 5th or 10th day of December, 1929, before the burial of Clara L. Downs, on December 12, 1929.

Several weeks after the burial of Clara L. Downs, the sexton discovered that her grave was on lot No. 69, and so notified W. L. Spaulding, the superintendent of the Louisville Cemetery Association.

After the burial of his daughter, Robert C. Downs, visited her grave and began to complain that another grave was on the lot he had purchased from the association, and insisted that there was no grave on it at the time of his purchase. The sexton informed him that the remains of his daughter were buried on lot No. 69, but could be disinterred and reburied in the proper lot without any cost to him.

The president and superintendent of the Louisville Cemetery Company thereafter, without the knowledge of Downs or any member of his family, and without affording him and his family an opportunity to be present, caused the remains of Clara L. Downs to be disinterred and reburied on the four-grave lot No. 49. The sexton and two assistants performed the work and labor. The wooden box containing the coffin was removed from the grave on lot No. 69, but it was not opened nor was the body exposed, interrupted, or molested when it was taken up and reburied on lot No. 49.

For his cause of action, the appellee alleged that the appellant's employees, "willfully, wrongfully and secretly disinterred, displaced and reburied the body" of his daughter and deposited it in another grave without his authority, knowledge, or consent, and by reason thereof he had suffered mental pain or anguish.

To prevent a recovery, the appellant traversed the allegations of the petition, and set forth as an affirmative defense the mistake in the burial of the body on the wrong lot and its disinterment and reburial in an orderly and humane manner on the correct lot. This pleading was controverted by reply. Evidence was heard, and on a trial before a jury, under the instructions of the court, a verdict was returned in favor of appellee for the sum of $1,000 compensatory damages, and $1,500 punitive damages, a total of $2,500. A judgment was accordingly entered, from which this appeal is prosecuted.

A recovery may be had by the next of kin or the surviving spouse for an unwarranted interference with the grave of a deceased, or for the infliction of an injury to a corpse, if either be done (a) maliciously, (b) or by gross negligence, (c) or wantonly, i. e., with a reckless

disregard of the rights of another (Louisville & N. R. R. Co. v. Hull, 113 Ky. 561, 68 S. W. 433, 24 Ky. Law Rep. 375, 57 L. R. A. 771), (d) or for an unlawful or secret disinterment or displacement thereof (Ky. Stats., secs. 466 and 1335), or (e) an action of trespass quare clausum fregit may be maintained by the holder of the title, or the person in possession, of the lot on which a grave is located (Cooley on Torts 239, 240; 1st Blackstone's Commentaries 429; Hook v. Joyce, 94 Ky. 450, 22 S. W. 651, 15 Ky. Law Rep. 337, 21 L. R. A. 96), or (f) for the removal of a body from one grave to another by those in authority and control of the cemetery or burial ground, without notice, or an opportunity, to him who in law is entitled to be present, if he desires, before its removal. 1st Washburn on Real Estate, sec. 33; Kincaid's Appeal, 66 Pa. 411, 5 Am. Rep. 377; Partridge v. First Ind. Church, 39 Md. 637; Bessemer Land & Improvement Co. v. Jenkins, 111 Ala. 135, 18 So. 565, 56 Am. St. Rep. 26.

The established facts in the present case bring it within rule (f) as we have stated it. The burial of appellee's daughter on the Young lot, either with or without the consent or knowledge of appellee, was a trespass as against the owner and the person in possession of the Young lot, and an action in equity could have been maintained by the owner or the person in possession thereof for injunctive relief or for damages for trespass quare clausum fregit against both the appellant and the appellee by reason of the burial thereon of the body of Clara L. Downs, with the right in appellee to interpose the defense that it was done without his knowledge or consent. McWhirter v. Newell, 200 Ill. 583, 66 N. E. 345; Cave Hill Cemetery Co. v. Gosnell, 156 Ky. 599, 161 S. W. 980; Hertle v. Riddell, 127 Ky. 623, 106 S. W. 282, 32 Ky. Law Rep. 477, 15 L. R. A. (N. S.) 796, 128 Am. St. Rep. 364.

It is shown by the evidence without contradiction that the coffin containing the body of appellee's daughter was buried by appellant on the Young lot through a mistake, made in good faith by the employees in charge of its cemetery, and that to correct their mistake they disinterred it by taking up the coffin in an orderly manner and without opening it and without any indignity to the corpse, and reburied it on lot No. 49, within three feet of the first grave, without notice or opportunity to the appellee to be present before its removal and reburial.

The appellee was entitled to notice, and to an opportunity to be present to witness, if he desired, the disinterment and the reburial of the body of his daughter, to the end that he might be assured that it was orderly done and without indignity or molestation as well as to afford him an opportunity to have actual knowledge that it was actually reburied. The failure of appellant to afford him time or opportunity to be present for these purposes, furnishes the basis of the appellee's cause of action against the appellant for compensatory damages for his, the appellee's, mental pain or suffering, if any he endured as the direct and proximate result of the acts of appellant and its employees. Louisville & N. R. R. Co. v. Hull, 113 Ky. 561, 68 S. W. 433, 24 Ky. Law Rep. 375, 57 L. R. A. 771; Orr v. Dayton, Etc., Traction Co., 178 Ind. 40, 96 N. E. 462, 48 L. R. A. (N. S.) 474, Ann. Cas. 1915B, 1277; Burney v. Children's Hospital, 169 Mass. 57, 47 N. E. 401, 38 L. R. A. 413, 61 Am. St. Rep. 273; Davidson v. Reed, 111 Ill. 167, 53 Am. Rep. 613; Beatty v. Kurtz, 2 Pet. 566, 7 L. Ed. 521; Thirkfield v. Mountain View Cemetery Ass'n, 12 Utah, 76, 41 P. 564.

The appellee did not manifest his right to punitive damages. It is a fixed rule in this state that punitive damages are not authorized, and the jury should never be instructed to allow such damages in any case, unless the evidence tends to show that the defendant acted maliciously, willfully, or with gross negligence or with such recklessness as to indicate a wanton disregard of the rights of another. Adams v. Cabin Branch Coal Co., 147 Ky. 595, 144 S. W. 759; Pullman Co. v. Pulliam, 187 Ky. 213, 218 S. W. 1005; Green River Light & Water Co. v. Beeler, 193 Ky. 675, 237 S. W. 1.

In Meyers v. Clarke, 122 Ky. 866, 90 S. W. 1049, 93 S. W. 43, 28 Ky. Law Rep. 1000, 29 Ky. Law Rep. 393, 5 L. R. A. (N. S.) 727, Alice Roberts was sick a few days in the Good Samaritan Hospital in Lexington, Ky., where her death occurred. After death, her body was placed in the morgue. The undertaker notified her stepfather that the body was in bad condition, and the doctors would have to make an autopsy to ascertain the cause of death in order to procure a burial permit from the board of health. The undertaker's assistants and the doctors proceeded to hold an autopsy. It was made in the usual way with no unnecessary disfigurement of the

body. Neither the stepfather nor the mother, after being notified of the girl's death and her condition, was notified, of the time and place of the autopsy, and neither of them was present when it was performed. An action was filed against the undertaker and the doctors who held the autopsy to recover damages of them on account of its performance, without their consent. It was shown by the evidence that the body was not purposely mutilated or disfigured, but that the sole purpose of defendants was to comply with a rule of the board of health so as to enable the undertaker to procure a burial certificate which was required by the board of health under the charter and ordinances of the city of Lexington. On the submission of the case to the jury, the court instructed it to find for the plaintiff unless it believed from the evidence that the defendants, in making the autopsy on the body of the deceased, did so for the sole purpose, in good faith, to ascertain the cause of her death, and in order that they might be able to give correctly a certificate stating the cause of her death for the purpose of obtaining a permit for the burial of the body; in this event to find for the defendants.

The evidence in that case established that the acts of the defendants relative to the body of deceased were properly and decently performed. The jury returned a verdict for defendants. On a review by this court, the judgment of the circuit court was affirmed. The principles enunciated in the case of Meyers v. Clarke, supra, are sufficiently applicable to the proven facts in the present one to authorize an instruction on mitigation of compensatory damages. We see no reason for not applying to that extent in the present one the principles which were applied in that case.

The appellant here offered an instruction substantially stating to the jury, that if it believed from the evidence the appellant in good faith and in an orderly way, and without any indignity or mistreatment of the remains of the daughter of appellee, removed her remains from one grave to another, to find for the appellant.

This instruction authorized the jury to consider the facts set forth in it as a complete defense to the appellee's cause of action. At most the facts stated in the instruction may be considered only in mitigation of damages.

While it is not the duty of the court in a civil action to give on his own motion the whole law of the case (Madisonville, Hartford & E. R. R. Co. v. Thomas, 140 Ky. 143, 130 S. W. 975), but if an offered instruction is defective in form or substance, the court should prepare or direct the preparation of a proper one on the point attempted to be covered by the one offered, and his failure to do so is a reversible error. West Ky. Coal Co. v. Davis, 138 Ky. 667, 128 S. W. 1074; Louisville & N. R. R. Co. v. Stephens, 188 Ky. 1, 220 S. W. 746. The latter rule made it the duty of the court to give to the jury the appellant's offered instruction so written as to authorize the jury to consider the facts therein presented in mitigation of damages.

It will be observed that it is our view that the appellee was not entitled to recover of appellant puntitive damages. The court should have directed the jury to find for appellee such sum in damages as will fairly and reasonably compensate him for any mental pain or suffering which the jury may believe from the evidence he endured, if any, by reason of appellant's employees taking up and reburying the remains of his daughter without notice or opportunity to him to be present; unless it so believes from the evidence, it should find for the appellant. But if it should find for the appellee, it may consider in mitigation of damages the evidence of good faith of appellant when so taking up and reburying the remains.

On another trial substantially these instructions, with another telling the jury that nine or more, less than twelve, may agree on a verdict, should be given.

It is insisted that the damages awarded by the jury are excessive. We will not now consider this question, as it may not arise again on another trial.

Wherefore the judgment is reversed and cause remanded, for proceedings consistent with this opinion.