## SMITH v. KING.

Court of Appeals of Kentucky.
May 8, 1951.

Rehearing Denied June 22, 1951.

Redwine & Redwine, Winchester, Alva A. Hollon, Hazard, for appellant.

Rodney Haggard, D. L. Pendleton and R. Russell Grant, Winchester, for appellee.

MOREMEN, Justice.

Charles E. King, Jr., who died when he was six years old, lived on the south side of State Highway 15, just east of where this highway becomes Winn Ave. in Winchester, Ky., and on the morning of the 23th day of September, 1948, he crossed this road and went to the house of a neighbor, who lived on the north side about 84 feet east of his home, for the purpose of calling a cab in which he and his aunt would be conveyed to school and to work. He had made the call and was returning to his home along the highway which originally had been 18 feet, 4 inches in width and to which an edge of blacktop had been added to a depth of 13 inches. Contiguous to the edge of this blacktop was a gravel path or a grassy strip (the witnesses use both terms) and immediately north of this was a ditch. On this same day at about 3 o'clock in the morning appellant had left his home in Perry County, Ky. and had undertaken this journey to Lexington. As he approached Winchester, and near the scene of the accident, the road was straight for about 1,080 feet. He saw this child on the edge of the highway (other witnesses placed the child well off the surfaced portion of the road) about 125 steps ahead of him. Appellant was driving a 1947 Chevrolet truck with a protruding bed. He gave no explanation of the reactions he experienced upon seeing the child; he did not sound his horn, slow down, although he stated that he was driving slowly, nor do anything that might indicate that he

felt any special obligation upon seeing the child. The right front end of the truck hit the child in the back of his head and he died from a contusion which he received about one inch from his left ear. The driver does not satisfactorily explain why his vision wandered from the child after first seeing him some distance away. He stated that although he felt a bump at the time of the accident, he did not know that he had hit the child. He did say that near the point of impact he pulled to the center of the road, which statement is denied by other eye-witnesses. The child's mother and his aunt, who were on the porch together with a witness who was close to the scene of the accident, testified that the child was off the road, and the edge of the body of the truck struck him when he was in that position. Their testimony is direct and positive while the testimony of appellant is such that the jury might properly conclude that appellant did not look again at the child after he first saw him some 125 steps away. Upon the trial of the case the jury returned a verdict for appellee, administrator of the estate of Charles E. King, Jr., in the sum of $10,000 as compensatory damages, $2,500 as punitive damages and $580 as special damages.

The appellant complains principally that it was error to instruct the jury on the question of punitive damages and contends that an instruction concerning punitive damages may only be given in cases involving malice or a deliberate action and criticizes the instruction given upon the ground that the jury were permitted to return a verdict for punitive damages if they believed that the negligence was gross. We cannot concur in this interpretation of the instruction given on this point which reads as follows:

"If the jury believe from the evidence that the negligence of the defendant, Andrew J. Smith, was gross and the acts of the defendant, Andrew J. Smith, were done with wanton and reckless disregard of the rights of the decedent, Charles E. King, Jr., deceased, the jury may, in their discretion, in addition to damages as set out in Instruction II, award the plaintiff, Charles E. King, administrator of the estate of Charles E. King, Jr., deceased, punitive damages, the whole award to him, however, not to exceed the sum of $25,580.50, the amount claimed in the petition and petition as amended.

"If the jury find for the plaintiff, you will state in your verdict whether the sum is compensatory or punitive damages, and if both, the amount of each."

This is the same instruction, mutatis mutandis, recommended in "Stanley's Instructions to Juries," at page 392, and supported by authority thereunder cited.

It will be noted that the jury were required from the evidence to believe not only that the negligence was gross but were also required to believe that the acts were done with wanton and reckless disregard of the rights of decedent. We are of the opinion that the jury were well within the limits of reason when they found that the defendant was not only grossly negligent but also reckless in his failure to be alert after he had once observed the presence of this child on the side of the road. Appellant did state that he swerved out into the middle of the road before the impact but he did not state that he made any effort other than that to avoid the accident.

Appellant cites in support of his contention, that punitive damages may be awarded only where the negligence is malicious and should be allowed only in cases where there is evidence to show that the defendant acted maliciously or willfully, the cases of Louisville & N. R. R. Co. v. Wilkins' Guardian, 143 Ky. 572, 136 S.W. 1023; Cadle v. McHargue, 249 Ky. 385, 60 S.W.2d 973; Sistrunk & Co. v. Meisenheimer, 205 Ky. 254, 265 S.W. 467; Green River Light & Water Co. v. Beeler, 193 Ky. 675, 237 S.W. 1; Louisville Cemetery Association v. Downs, 241 Ky. 773, 45 S. W.2d 5, and other cases. But a careful reading of these cases has demonstrated that although malicious and willfull actions will authorize an instruction for punitive damages, such an instruction may also be given in cases involving gross negligence brought about by wanton or reck-

less disregard of the safety of plaintiff's person.

Appellant contends that the court erred in failing to give an instruction offered by him which would have submitted to the jury the question of whether or not plaintiff suddenly or unexpectedly walked or ran into the side of defendant's truck and by reason of which and as a sole cause thereof decedent was killed. Such an instruction would not have been proper under the facts shown in this case because no witness testified that he saw the child on the blacktop of the road. Witnesses introduced by appellee placed the child off the road and in the gravel path. Appellant was not watching the child at the time of the impact and stated no more than that he felt a thud as he swerved out to the center of the road. Under the evidence adduced an instruction involving the sudden appearance rule would have been erroneous.

We have carefully examined the instructions given in this case and are of opinion that they correctly stated the law of the case to the jury.

Appellant cites 19 instances in which he believes the court was in error in admitting incompetent evidence and in refusing to admit competent evidence, some of which items will be grouped in this discussion. He makes the following complaints:

(1) The admission of evidence concerning the progress of the child in school was prejudicial. The health, mental capacity, and nature of this child were proper subjects to present to the jury because they were entitled to know some of his personal attributes before they assessed damages for the taking of his life.

(2) It was inflammatory to allow the deputy sheriff to say how many automobile accidents he had investigated. This evidence was competent in order to qualify him as an expert in making traffic investigations.

(3) One witness was permitted to change his testimony in that at one place he stated that he knew the truck struck the child, and later stated that he didn't see the accident. If this is a material conflict in his evidence, it was for the jury to consider when assessing its probative value.

(4) Appellant was not permitted to state that he did everything he could to avoid injuring the boy. Appellant was permitted to testify concerning all facts which he wished to give and his conclusion would not have added to the inquiry.

(5) In several instances counsel was permitted to intimidate witnesses. If, in fact, this was done, we are unable to discover it from the cold record before us.

(6) A witness was not permitted to state what the child's mother had said after the accident. Counsel for appellant objected to this question and the court did not sustain the objection, stating, "If he can tell what Mrs. King said." Counsel for appellee pursued the questioning on this point no further and no avowal was made; therefore we have no basis for determination of the competency of any answer which Mrs. King might have made.

(7) Counsel invites the court to consider the last pages of the record beginning at page 136 and determine whether competent evidence was erroneously excluded. We have made this search and have found nothing improper.

Appellant insists, finally, the instruction concerning punitive damages influenced the jury to return a verdict against him, and argues that the use of the word "punitive" coupled with "the idea of slight care," was sufficient to induce the jury to conclude that appellant was a careless and criminally reckless driver. We have pointed out above that the instruction was proper; was not based upon the failure to use slight care alone and required the jury must find not only that the negligence was gross, but also that the acts of appellant were done with wanton and reckless disregard of the rights of the child. The jury apparently believed the testimony of witnesses introduced by appellee and found that appellant failed to use slight care and was guilty of wanton and reckless conduct.

We are of opinion that appellant was vigorously defended at a fair trial, and find no material error in the record.

Wherefore, the judgment is affirmed.