# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

## Union Dale Cemetery Company's Case.

*Municipal liens—Sewer—Cemetery companies—Exemption.*

1. A general grant of power by the legislature to municipalities to assess the cost of authorized improvements against property benefited was not intended to make a departure from the fixed policy of the commonwealth not to subject places of sepulture to lien, levy and sale.

2. Where the charter of a cemetery company exempts the land of the company and the burial lots therein "from execution, attachment, taxation or any other claim, lien or process," a municipal lien for a sewer improvement cannot be filed against the land of the company or the burial lots. The General Sewer Act of April 28, 1899, P. L. 100, does not repeal the special charter immunities of such a company, nor are they repealed by the Acts of June 4, 1901, P. L. 364, and March 19, 1903, P. L. 41.

3. Special charter privileges are not revoked by language negative in character and indefinite in meaning.

4. The legislature may alter, revoke or annul any privilege of immunity conferred by the act of incorporation, but when it does so the intention should clearly appear from the language used.

Argued Nov. 3, 1909. Appeal, No. 127, Oct. T., 1908, by the Union Dale Cemetery Company, from order of C. P. No. 2, Allegheny Co., July T., 1907, No. 973, dismissing exceptions to viewers' report in the Matter of Sewer on Marshall Avenue.

Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.   Reversed.

Exceptions to report of viewers.  Before FRAZER, P. J.

From the record it appeared that a jury of view had assessed the Union Dale Cemetery Company in the sum of $4,145.59 for benefits accruing from the construction of a sewer on Marshall avenue, a street abutting on the cemetery property.

Exceptions on the part of the cemetery company were dismissed by the court.

*Errors assigned* were in dismissing exceptions to viewers' report.

*Thomas Patterson,* of *Patterson, Sterrett & Acheson,* with him *Trimble & Chalfant,* for appellant.—By virtue of the provisions of the several acts and supplements thereto incorporating the Mount Union and Hilldale Cemetery Companies the property, real and personal, now held by the Union Dale Cemetery Company for burial purposes, as well as the lots granted to individuals, is exempt from levy and sale and therefore from assessment for sewers.

The immunity of the land of the Union Dale Cemetery Company from levy or sale, secured by the original special acts and their supplements and the consolidating Act of April 2, 1869, P. L. 638, has not been taken away by the Act of April 28, 1899, P. L. 100: Brown v. County Commissioners, 21 Pa. 37; Penna. R. R. Co. v. Phila. County, 220 Pa. 100; Malloy v. Commonwealth, 115 Pa. 25; Harrisburg v. Scheck, 104 Pa. 53; Seifried v. Commonwealth, 101 Pa. 200; Rounds v. Waymart Borough, 81 Pa. 395; Bounty Accounts, 70 Pa. 92; Phila. & Reading Terminal R. R. Co.'s Appeal, 1 Pa. Superior Ct. 63.

*Lee C. Beatty,* with him *W. B. Rodgers* and *A. M. Thompson,* for appellee.—The alleged immunity from assessment has been repealed: Washington Avenue, 69 Pa. 352; Harrisburg v. McPherran, 14 Pa. Superior Ct. 473; Broad Street, 165 Pa.

475; Northern Cent. Ry. Co. v. Maryland, 187 U. S. 258 (23 Sup. Ct. Repr. 62); Penna. R. R. Co. v. Phila. County, 220 Pa. 100; Wagner Free Institute v. Philadelphia, 132 Pa. 612; Yazoo, etc., Ry. Co. v. Adams, 180 U. S. 1 (21 Sup. Ct. Repr. 240); Iron City Bank v. Pittsburg, 37 Pa. 340; Philadelphia v. Masonic Home, 160 Pa. 572.

A general act exempting churches, cemeteries, etc., from taxation does not relieve them from liability for the payment of special assessments: Broad Street, 165 Pa. 475; New Castle City v. Stone Church Graveyard, 172 Pa. 86; Philadelphia v. Union Burial Ground Society, 178 Pa. 533; Philadelphia v. Franklin Cemetery Co., 2 Pa. Superior Ct. 569; Fraim v. Lancaster County, 171 Pa. 436; Mansel v. Fulmer, 175 Pa. 377; Chalfant v. Edwards, 176 Pa. 67.

OPINION BY MR. JUSTICE ELKIN, January 3, 1910:

The Mount Union Cemetery Company was incorporated by a special Act of assembly passed on April 14, 1846, P. L. 353, and the Hilldale Cemetery Company by special Act of April 22, 1857, P. L. 491. The powers, privileges and immunities of the original companies were respectively supplemented by the special Acts of April 17, 1861, P. L. 381, and March 25, 1861. By the special Act of April 2, 1869, P. L. 638, the two companies were consolidated under the name of the Union Dale Cemetery Company, appellant here. By the act of consolidation all the rights, liberties, powers, privileges and immunities possessed by each of the original companies were conferred upon the new consolidated company, which was also charged with all the duties and obligations of the merged companies. The legislature had the undoubted power to confer upon the consolidated company all the rights, privileges and immunities enjoyed by each of the merged companies, and that this power was exercised in express terms by the consolidating act is not open to serious question. We start, therefore, with the proposition that the new company possessed all the powers and immunities of each of the old companies, and we must first consider whether these immunities are sufficient in law to defeat a recovery in the present proceeding. One purpose of the

corporation, as stated in the preamble of the act, was to provide a permanent burial place for the dead, "so that the graves may not be violated, or shrubbery and improvements injured, or the burial lots, containing the bodies of deceased friends and relatives, levied upon and sold for the debts of the living." In order to protect the cemetery as a place of sepulture from sale and dismemberment it was provided in sec. 1 of the act of 1846, "that the same shall not be used for any other purpose than for the burial of the dead and shall not be liable to be levied upon and sold for debt, taxes or otherwise, howsoever." As a further protection it was provided, "that neither the said land or personal property shall or may be subject to levy or sale while used for the purposes of said cemetery." The act of 1857 provided that when the conveyance of a lot was evidenced by a deed or a certificate the grantee took "a right in fee simple to such lot or lots, exempt from execution, attachment, taxation or any other claim, lien or process, for the sole purpose of interment under the regulations of the corporation." All of these immunities, as hereinbefore indicated, are now enjoyed by the new consolidated company. The manifest and declared intention of the legislature in the grant of these immunities was that the land thus set apart should be regarded as a place of sepulture only where the dead might lie in a burial ground undisturbed by the writ of an execution creditor and exempt from the warrant of the tax collector. It was not unusual for the legislature to include these immunities in acts incorporating cemetery companies because from the beginning of our state government it has been the policy of our commonwealth to treat burial grounds as sacred places not subject to levy or sale either by individual creditors or by taxing authorities. It is true in the present case no direct tax was levied, but if the report of the viewers be confirmed absolutely a municipal lien will follow, which if not paid can only be enforced by sale of the cemetery property. The right of lien includes the power to sell, else the lien would be a nullity. Sale by adverse process means the divesting of title, and when the title of the cemetery company and of the lot owners is divested, the burial ground intended to be a permanent place

of sepulture for the dead becomes a piece of property subject
to barter and trade by the living. The legislature may subject
cemetery companies to taxes, liens and processes, but since the
policy of our state, which reflects the feeling and sentiment of
our people for more than a century, has been to regard burial
grounds as sacred places not subject to writs and processes
applicable to other kinds of property, it is not too much to
require that such a radical departure from the fixed policy of
the commonwealth shall be expressed in language so plain as
to leave no doubt as to the legislative intention so to do.

This brings us to the consideration of the second branch of
the case. It is contended, and the learned court below so held,
that the general act of 1899 providing that viewers shall assess
the cost of constructing sewers upon property benefited, re-
peals all prior legislation exempting particular property from
this liability and that the charter immunities of the appellant
corporation have been thereby annulled or revoked. The con-
stitutional amendment of 1857, as well as the new constitution,
reserves to the legislature the power to alter, revoke or annul
any charter of incorporation whenever in their opinion it may
be injurious to the citizens of the commonwealth. Under these
constitutional provisions the legislature has the power to do
what the appellee contends was done by the act of 1899,
namely, the repeal of the special charter immunities of the ap-
pellant company, but the question here presented is, Has it ex-
ercised the power and was it the legislative intention so to do?
This act does not in terms repeal any charter privilege or im-
munity, nor in our opinion does such a result follow by neces-
sary implication. We cannot believe that a general grant of
power by the legislature to municipalities to assess the cost of
authorized improvements against properties benefited was in-
tended to mark a departure from the fixed policy of the
commonwealth not to subject places of sepulture to lien, levy
and sale. It is shocking to one's sense of the fitness of things
to think of the consequences that may follow when a writ of
execution seizes upon a cemetery set apart for the sole purpose
of a burial ground and sale is made to a possible speculative
purchaser. A decent regard for the memory of the dead and

the feelings of the living demands that when such a policy is adopted it should be in express language and by positive enactment. We find no such intention either expressed or implied in the act of 1899. But the learned counsel for appellee strongly urges and ably argues that this legislative intention is clearly expressed in sec. 5 of the Act of June 4, 1901, P. L. 364, as amended by the Act of March 19, 1903, P. L. 41, which in substance provides that public property used for public purposes shall not be subject to tax or municipal claims, and that places of religious worship and places of burial not used or held for profit, shall not be subject to tax or municipal claims except for removal of nuisances, or sewer claims or sewer connections, or for curbing, paving or repaving footways in front thereof. It will be observed that this act in the main is but declaratory of the existing policy of the state not to subject places of burial to levy and sale by means of a tax lien or municipal claim. It is true "sewer claims and sewer connections" are carved out of the general exemption, and while the language used is negative in character the legislative intention to subject property so held to municipal claims for the purposes stated may be fairly inferred. However, it does not follow that because the legislature provided in this negative way for the filing of municipal claims for the cost of sewer construction against burial places generally that the intention was to alter, revoke or annul the special immunities conferred by charter upon the appellant company. This is not the case of the repeal of a special law by a general act, but what is attempted to be done here is to revoke the charter privileges and immunities conferred by the act of consolidation, and this by a general law which does not affirmatively enact any legislation on the subject and only negatively suggests that claims may be filed against a certain class of property. None of our cases, fairly considered, have gone so far as to hold that special charter privileges may be revoked by language negative in character and indefinite in meaning. The legislature may alter, revoke or annul any privilege or immunity conferred by the act of incorporation, but when it does so the intention should clearly appear from the language used. We think such

intention does not clearly appear and that the immunity from levy and sale upon writ or lien has not been repealed.

Decree reversed and record remitted with directions to make such order in accordance with the views herein expressed as may be necessary to protect the rights of appellant. Costs of this appeal to be paid by the appellee.