## No. 10,912.

### CITY AND COUNTY OF DENVER, ET AL. *v.* TIHEN.

Decided April 6, 1925. Petition for rehearing stricken May 4, 1925.

Action to restrain the collection of a local improvement tax against cemetery property. Judgment for plaintiff.

### *Affirmed.*

1. WORDS AND PHRASES—*"Taxation" and "Assessment"* distinguished and defined.

2. CONSTITUTIONAL LAW—*Taxation—Legislative Power.* Unless restrained by the Constitution the state legislature has plenary power to levy and impose tax assessments.

3. TAXES AND TAXATION—*Cemeteries.* In Colorado cemeteries of corporations not organized or maintained for profit, and burial lots of members, are exempt from all tax assessments, general and local, under existing statutes.

4. CONSTITUTIONAL LAW—*Taxation.* If the Constitution provides that property used for certain purposes shall be exempt from taxation, it is the use and not the ownership which determines the right of exemption.

5. MUNICIPAL CORPORATIONS—*Local Assessments.* Local assessments by municipal corporations are sustained on the theory that the property assessed is enhanced in money value at least to the amount of the levy.

6. PUBLIC POLICY—*Legislative Power.* The legislature of a state has sole power to say what the public policy of the state shall be.

7. CONSTITUTIONAL LAW—*Police Power.* The state cannot estop itself by grant or contract from the exercise of its police power.

8. *Home Rule Amendment—Purpose.* The purpose of the home rule amendment was to give municipalities exclusive control in matters of local concern only, and unless set aside by express words or necessary implication, the Constitution and general laws are as much in force in home rule cities as in other portions of the state.

9.  MUNICIPAL CORPORATIONS—*Taxation—Injunction.*  The rule that injunction to restrain the collection of a tax will not lie if opportunity has been given the owner to have his objections considered by the city council, has no application to a case where the property itself is nonassessable.

10.  *Local Assessment.*  That failure to pay assessment on cemetery property exempt from taxation will not necessarily result in a sale of the property and loss of title if not redeemed, does not preclude an objection on that ground.

*Error to the District Court of the City and County of Denver, Hon. Clarence J. Morley, Judge.*

Mr. RICE W. MEANS, Mr. MILNOR E. GLEAVES, for plaintiffs in error.

Mr. JOHN H. REDDIN, for defendant in error.

*En banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THE object of this action by J. Henry Tihen, as Roman Catholic Bishop of the diocese of Denver, plaintiff, against the City and County of Denver, defendant, is to restrain the city from collecting an assessment for a local improvement which it levied upon a cemetery, not for profit, situate within the city, legal title to which in fee is vested in the plaintiff. It is not, as the defendant claims, a suit to quiet title. The important and controlling question for decision is whether such a cemetery is exempt from the assessment. Section 5 of article X of our Constitution exempts from taxation cemeteries not used or held for private or corporate profit, unless otherwise provided by general law. As the General Assembly has not otherwise so provided, this cemetery, which is not, and never has been, used for corporate or private profit, is exempt from taxation. This constitutional exemption was reproduced in our general revenue act (R. S. 1908, § 5545, p. 1303),

and the section was amended in 1921 (S. L. 1921, p. 687; section 7198, C. L. 1921, p. 1840), by inserting the word "general" before the word "taxation"; the evident purpose being to show the legislative intention that "taxation" was used in the ordinary sense in which it is employed in our Constitution and statutes generally, as in other states of the Union, as the general burden or charge imposed by the sovereign power upon all property for general public purposes of the state and its subordinate divisions and municipalities, as distinguished from "assessments" against property for local improvements which are usually levied by the subordinate municipalities in which the property is situate.

In 1887 our General Assembly (S. L. 1887, p. 70) passed an act, the fifth section of which exempts all property of cemetery corporations used or owned for burials, and all lots owned by the members thereof, from "taxation, assessment, lien, attachment and from levy and sale upon execution, except for the purchase price thereof." By section 3 of the same act the net proceeds arising from the sale of lots by such corporation, and all other income and revenue thereof, after paying for the grounds, shall be exclusively applied to the improvement and used for the necessary expenses of caring for the property, and no part thereof shall be appropriated for the profit of the corporation or its members. In 1891, S. L. 1891, p. 58, two sections, 6 and 7, were added to the 1887 act; section 6 specifically providing that the former act shall not apply to any corporation or association organized to maintain a cemetery for profit, and section 7 postponing exemption until the property is actually sold or disposed of for cemetery purposes.

In section 6 of the amendment of 1912 to article XX of the Constitution, commonly designated as the "Home Rule Amendment" (Denver Municipal Code 1917, pp. 23, 24), by which the present City and County of Denver was created and under which, with amendments thereto, it is operating, it is provided, among other things, that the charter

of Denver shall be the organic law and extend to all its local and municipal matters, and with respect to the same such charter and ordinances passed in pursuance thereof shall supersede state laws in conflict therewith. For the government and administration of its local and municipal matters the people of Denver are given the power to legislate to the same extent as the General Assembly of the state may with respect to statutory municipalities concerning their local and municipal matters.

Clause g of section 6 confers upon the city the power to assess property for municipal taxation, and to levy and collect taxes for municipal purposes, and special assessments for local improvements.

Clause h reads: "The statutes of the state of Colorado, so far as applicable, shall continue to apply to such cities and towns, except in so far as superseded by the charters of such cities and towns or by ordinance passed pursuant to such charters."

It is upon the foregoing constitutional and statutory provisions, in the light of recognized rules of construction, the declared public policy of the state and the general, if not universal, sentiment of civilized society with respect to the sacredness of the burial places of the dead, that this controversy is to be determined.

We start then with the premise that though our Constitution exempts this cemetery from general taxation it does not exempt it from local assessment for public improvements. Taxation and assessment are not synonymous terms. Each is a separate and distinct exercise of the sovereign power to tax but, as indicated above, taxation, as the word is employed in our Constitution and statutes generally, is that burden or charge upon all property laid for raising revenue for general public purposes in defraying the expense of government. Assessments are local and resorted to for making local improvements on the theory that the property affected is increased in value at least to the amount of the levy. The law is that, unless restrained by the Constitution, a state legislature has

plenary legislative power, and this includes the power of levying taxes and imposing assessments. In Colorado the General Assembly, being thus restrained as to general taxation, may not subject the class of cemeteries mentioned therein to general taxation, but as to assessments there are no constitutional restrictions on the General Assembly. The law-making body, therefore, possessing plenary legislative power over the subject of assessments may, if it chooses, and as it has done, exempt cemeteries like this one from local assessments. Other states by statutes have exempted cemeteries by a provision that they shall not be subject to "any tax or debt whatever." *Seattle v. Mt. Pleasant Cemetery*, 59 Wash. 41, 44, 109 Pac. 1052. In *Olive Cemetery Co. v. Philadelphia*, 93 Pa. 129, 39 Am. Rep. 732, by the words: "shall be exempt from taxation, except for state purposes", and in *Union Dale Cemetery Co.*, 227 Pa. 1, 75 Atl. 835, by the words: "exempt * * * from execution, attachment, taxation or any other claim, lien or process." In *Mt. Auburn Cemetery v. Cambridge*, 150 Mass. 12, 22 N. E. 66, 4 L. R. A. 836, the exemption was based on these words: "exempt from taxation and from execution." Many other similar cases might be cited—and we have referred to the foregoing only to show the tendency to exempt cemeteries—but it is not necessary to do so, since our statute expressly exempts from all assessments cemeteries of corporations not organized or maintained for profit and the burial lots of its members. That our General Assembly, at the time the act of 1887 was passed, had the plenary power to do so is unquestioned, and unless the Home Rule Amendment, which will be later considered, has abrogated that statute, such cemeteries throughout the state are still free from assessment. A case directly in point is *Wey v. Salt Lake City*, 35 Utah, 504, 101 Pac. 381. In Utah, as in Colorado, the Constitution exempts certain property from taxation. The Utah court held it competent for the legislature to provide for exemption thereof from local assessments because its legislature, like our legislative body, has plenary legislative

power over assessments in the absence of a constitutional limitation. In *City of St. Paul v. Oakland Cem. Assn.*, 134 Minn. 441, it is said, page 444, 159 N. W. 962: "It would appear to be in consonance with sound reasoning to say that the Constitution, by exempting certain property from general taxation, has invited rather than forbidden the legislature to exempt the same property from assessment for local improvements." The opinion quotes with approval from a decision of the Supreme Court of Ohio: "There is nothing then in the Constitution forbidding either the assessments of such property or its exemption from assessments", and concludes with the statement: "And decisions generally recognize the existence of statutory as well as constitutional exemptions", citing *City Street Imp. Co. v. Regents*, 153 Cal. 776, 96 Pac. 801, 18 L. R. A. (N. S.) 451.

In this connection it is pertinent to say that there are economic, as well as sentimental, reasons why our states generally exempt from taxation and local assessments cemeteries not for profit, and this subject has been considered in *Cave Hill Cem. Co. v. Gosnell*, 156 Ky. 599, 161 S. W. 980; *In re Perry Avenue*, 103 N. Y. Supp. 1069; *In re Starr Street*, 131 N. Y. Supp. 71, and in *Northern Light Lodge v. Town of Monona*, 180 Iowa, 62, 161 N. W. 78, L. R. A. 1918A, 150. One of the reasons given for the exemption is that unless burial places are provided by private or corporate interests, the expense and care thereof would otherwise be upon the state and the burden would be a public one and far beyond the amount received by imposing on them such charges. In the Monona Case from Iowa, Judge Weaver, at page 80 of the opinion, raises the inquiry: "Whether cemeteries are not in a class by themselves, and whether, under the established principles of the common law and the usages of all civilized peoples, ground set apart for the burial of the dead is not impliedly exempted from the burdens imposed by law upon property in general, unless it be where the legislature has otherwise clearly and unmistakably provided." We do not

base our decision upon the principle suggested in these cases, though they indicate the trend of judicial opinion, for we have in our own statute, as already stated, an express exemption of cemeteries from local assessments.

It is said, however, by the city that this exemption is applicable only to a cemetery owned and maintained by a corporation, and that it was not intended that the benefit thereof should accrue to a private individual or voluntary association who owns or operates the cemetery. We think this is too rigid a construction of the statute. It should be noted that the provision of our Constitution, as to exemption of cemeteries from taxation, applies to such as are not used or held for private or corporate profit, and our 1887 act exempting from assessment reads: "All the property of such corporation, used or owned for such purpose, and all lots owned by the members thereof, shall be exempt", etc., that is, not the corporation but the property is exempt if it is *owned or used* for cemetery purposes. Our statute does not say "owned and used" but "used or owned". Use, not use and ownership, is the test, certainly one test, of the right of exemption under this statute. In 37 Cyc. p. 908, (D), it is said: "If the constitution or statute provides that property used for certain purposes shall be exempted it is the use and not the ownership which determines the right of the exemption." The identical question arose in the Wey Case, supra, and the decision there was that it is the use, not ownership, that determines the right. The only property in Colorado exempted from both general taxation and assessments are cemeteries not organized or maintained for profit. These local assessments are sustained on the theory that the property assessed is enhanced in money value at least to the amount of the levy. *Pomroy v. Board,* 55 Colo. 476, 136 Pac. 78. In exempting them from assessments it might be said the legislature thereby in effect declared that they could not, in the nature of things, be enhanced in value by local improvements, when, as in this case, they have been permanently and solely devoted to use as burial places for the dead and cannot be used for any other purpose.

We must presume that the General Assembly, with full knowledge of the sentiment of all the people, intended to, as it did, declare it to be the public policy of the state that cemeteries not organized or maintained for profit, shall not be liable to assessments. The legislature of a state has sole power to say what the public policy of the state shall be. That public policy must be applicable to all portions of the state, and where, as with us, there are home rule or charter cities and towns (as well as those created by general statute), though the former were created after the exemption act was passed, this policy, as no change has been made in the exemption act, still applies to all classes of municipalities. The people of the state, in adopting article XX and the amendments thereto, did not intend to confer upon municipalities organized thereunder the absolute and unrestricted power to tax, or to make assessments for local improvements regardless of public policy. They knew that by constitutional provision cemeteries, not organized or maintained for private or corporate profit, are exempt from general taxation. They also knew that there was in existence at the time of the adoption of the Home Rule Amendment a statute of the state which specifically exempts from local assessments the same class of cemeteries. In delegating to the municipality the power of general taxation for municipal purposes, and in conferring the power to make assessments for local improvements, we think the people intended thereby to confer such powers, subject to existing or future constitutional and statutory provisions relating to exemptions of cemeteries from taxation and local assessments. This conclusion may be reached wholly aside from the fact that cemeteries are almost universally regarded as a class of property by themselves, but as our people generally, as do people in all civilized states, regard the burying places of the dead as sacred or hallowed ground, this sentiment doubtless contributed largely to the declaration of the public policy. Our General Assembly by statute, in the exercise

of its unquestioned power, is the only body competent to say what the public policy of the state shall be, and in it resides the sovereign police power of the state, independent of constitutional or common law provisions. There was, as already stated, in existence at the time of the adoption of article XX, a constitutional exemption from general taxation of cemeteries not for profit, and a statutory exemption from local assessments. That public policy of the state applies to every portion of the state. It is just as applicable to the home rule cities now as it was and is to municipalities organized under general statutes.

The case chiefly relied upon by the city is *County Commissioners of El Paso County v. City of Colorado Springs,* 66 Colo. 111, 180 Pac. 301. Colorado Springs, like Denver, is a home rule city and its authority to make assessments for local improvements is conferred by article XX of the Constitution and the charter thereunder adopted. This court held that a city block owned by the county as a court house and park was liable to assessment for local improvements. That case is clearly distinguishable from this. The block being county property was exempt from general taxation under the Constitution, but it was held not exempt from special assessment upon the ground that there was no constitutional or statutory exemption of such property from assessment, as there is a specific statutory exemption with respect to cemeteries not organized for profit. The court held that the matter of establishing, and assessing for, local improvements is a local matter, and under article XX the city's powers in that respect are plenary. It must be borne in mind that the decision of that case did not, and was not intended to, apply to property exempt by law from special assessments. The land there was only exempt from general taxation. There was not before the court in that case, as there is here, a situation where the property in question, the cemetery, is exempt by law from both general taxes and local assessments. The doctrine, as to the power of the municipality, laid down in that case is that the matter of the establishment and maintenance of,

and assessment for, local improvements is a "local and municipal" matter. The question as to what classes or kinds of property are subject to such assessment was not there involved and there was no decision that it is "a purely local matter". That is a question of general state import and to be determined by the General Assembly. Indeed, clause "h" of the 1912 amendment to article XX, that the statutes of the state of Colorado, so far as applicable, shall continue to apply to such cities and towns except in so far as such statutes are superseded by the charters or ordinances of the city, makes the 1887 exemption act just as applicable to cemeteries in home rule cities as those in cities of other classes, and there has been no attempt either by charter or ordinance to supersede the statute. The universal sentiment of the people against placing public burdens or charges upon such cemeteries is just as dominant in the home rule, as in the statutory, cities. The public policy of the state with respect thereto has been expressly declared and never set aside. In making such declaration the General Assembly was exercising its sole right to declare for the entire state what the public policy shall be with reference to the exemption of cemeteries not for profit from all kinds of public burdens and charges. This right of the state to declare its own public policy is an exercise of its inherent, indefinable police power. Among the subjects to which this police power extends are the peace and good order of society, the general welfare, the security and quiet of the people. A state cannot estop itself by grant or contract from the exercise of its police power. This is a principle often decided by the courts. The most recent decision we find is by the Supreme Court of the United States at the October, 1924, term in the case of *Sanitary District of Chicago v. The United States of America,* 45 Sup. Ct. 176. We do not believe the people in adopting article XX, and the amendments thereto ever intended to surrender or relinquish any portion of its police power to declare the public policy of the state; but, if it had so intended, it would have been an abortive effort.

In no event should the courts hold that the legislature of a state is not supreme throughout its entire territory in the exercise of its sovereign police power, subject, of course, to constitutional restrictions, or that its right and authority to declare its public policy for the entire state has been divested, unless the sovereign people in explicit terms and by constitutional methods have otherwise declared.

After the adoption of article XX this Court has decided that the state was not precluded thereby from unrestricted regulation of the liquor traffic. *Walker v. People,* 55 Colo. 402, 135 Pac. 794. In *Keefe v. People,* 37 Colo. 317, we said, at page 325, 87 Pac. 791, that the state statute prohibiting any officer of a municipality from permitting any working man employed by it to work more than eight hours a day was as applicable to home rule, as to other classes of, municipalities. The court there held, and the ruling is peculiarly pertinent here, that the state, in enacting this statute declared what the public policy of the state shall be with respect to hours of labor, and that it still has the supreme power to enact general laws declaring what its public policy shall be. It was further held that while the matter of building and making a public sewer was in a sense a local matter, just as, in one sense, an assessment is, yet, in the full sense, it is of state and governmental import, and the power of the municipality to legislate with respect thereto is subordinate and subject to the police power of the state by which it declared what its public policy should be. This doctrine was approved in *Glendinning v. Denver,* 50 Colo. 240, 114 Pac. 652, where there was a conflict between a state statute and a municipal ordinance of the city regulating the sale of oleomargarine. In one sense such regulation is local, still legislation with respect to that matter involved the public health and the state law is supreme. The exemption here affects and directly concerns the public welfare, the peace and good order of society, the quiet and security of the people in preserving from profanation the burial places of their dead. In *Mauff v. People,* 52 Colo. 562, 123 Pac. 101, this court reiterated

what it had said a number of times before in the cases just cited, and in other cases which might be referred to, that the purpose of the Home Rule Amendment was to give to the people of home rule cities exclusive control in matters of "local concern only", and that where the Constitution and general laws are not set aside by express words or necessary implication, they are as much in force in home rule cities as in other portions of the state. That if by the Home Rule Amendment it had been undertaken to free the home rule cities from the state Constitution, from statute law, and from the authority of the General Assembly respecting matters other than those of purely local concern, that amendment could not have been upheld. The same doctrine has been declared in *People, ex rel. v. Cassiday,* 50 Colo. 503, 117 Pac. 357. In the Mauff Case the specific ruling was that the people of the home rule cities cannot legislate in a matter which is one of general interest and that even a municipal election was of such general and public interest that the city could not legislate upon it. Applying the principle laid down in these decisions, we say that while the matter of the taxation and assessment of cemeteries in this state, not organized or maintained for private or corporate profit, is, in a sense, local to every city and county in the state, yet in the larger and fuller sense, considering the general sentiment of all civilized people that ground set apart for the burial place of the dead is sacred, it is a matter of state-wide importance and of governmental import, and not merely of local or municipal concern. Certainly in the absence of a specific contrary provision on the subject, this court should not hold that the people of the state did or would consent that cemeteries in any part of the state should be subject to taxation or assessment.

The objection of the city that the suit to restrain collection will not lie because the plaintiff did not seasonably and within the time provided by ordinance interpose its objection is not tenable. Decisions of this and other courts, that injunction to restrain collection will not lie if opportunity

by the city has been given to and ignored by the owner of the property unjustly assessed to have his objections considered by the city council, are not applicable to such a case as this where the property itself is nonassessable. *Ogden City v. Armstrong,* 168 U. S. 224, 18 Sup. Ct. 98, 42 L. Ed. 444; *City of Muskogee v. Nicholson,* 69 Okl. 273, 171 Pac. 1102. The objection to this assessment is that the property itself was not subject to assessment. The city council had no power or authority to levy the assessment. See also *Dumars v. City of Denver,* 16 Colo. App. 375, 65 Pac. 580, 9 A. L. R. Ann. p. 665 et seq., and authorities collected; *Ellis v. Town of La Salle,* 72 Colo. 244, 211 Pac. 104; *Deter v. City of Delta,* 73 Colo. 589, 217 Pac. 67.

The point made by the city attorney that the plaintiff may not complain that failure to pay the amount of the assessment will necessarily result in a sale of the property, which, if not redeemed from, will convey a good title to the purchaser, is beside the point. It is not what steps the city will or will not take to enforce the collection, but what the city might do, under the provision of the charter and the ordinances giving to the city authority to cause the property to be sold and the plaintiff's title divested, that furnishes the test of the right of the plaintiff to complain. The city may refuse to foreclose, but the only provision made by the charter and ordinances for a failure to pay is a sale of the property, which, if not redeemed from, will in time ripen into a perfect title, which would give to the holder thereof the right to make such disposition of the cemetery and the monuments as he saw fit, and to remove the remains of the dead from the soil.

Other interesting questions are discussed by counsel with the same unusual fullness and fairness exhibited in all the briefs and oral arguments, but their resolution either way would not materially affect our decision on the main question involved.

Our conclusion is that this cemetery, whose legal title is in the plaintiff is not subject to the assessment levied; that the plaintiff is entitled to relief in this action, and that the

judgment of the district court awarding him relief by way of injunction restraining the assessment and collection of this tax is right, and it is affirmed.