## Harrisburg v. Harrisburg Cemetery Association.

*Cemetery company — Municipal claim for street paving — Exemption — Operating at a corporate profit—Acts of 1845, 1901 and 1915.*

1. The Harrisburg Cemetery Association, incorporated by the Act of Feb. 14, 1845, P. L. 26, is not exempt from a municipal claim for street improvements under the Act of June 4, 1901, P. L. 364, as amended May 28, 1915, P. L. 599, exempting, *inter alia*, places of burial not used or held for corporate profit.

2. The paving of the street abutting on the property is an "improvement" thereto which enhances its value and for which the corporation is authorized to expend its funds.

3. Where there is evidence that the cemetery company has accumulated a large fund which it has permanently invested, has unsold lots which will ultimately greatly increase the fund, a yearly net revenue of $10,000 in excess of expenditures, part of which it receives from the care of lots and erecting monuments for lot owners, the question whether the business of the company is operated for "corporate profit" is for the jury.

Claim by city against cemetery company for the cost of street paving. Motion for judgment *n. o. v.* C. P. Dauphin Co., M. L. D. 4, No. 906.

*John R. Geyer*, for plaintiff; *Paul A. Kunkel*, for defendant.

WICKERSHAM, J., May 2, 1927.—This action came on for trial, which resulted in a verdict in favor of the plaintiff, whereupon the defendant filed its motion for judgment in its favor upon the whole record. It was based upon a claim for municipal improvements, which consisted of the paving with sheet asphalt on a concrete base, and curbing with granite stone, the cartway of Herr Street, on the south side thereof, in front of the property of the defendant, said property having a frontage along said highway of 761 feet.

The only question in controversy, and the question which we submitted to the jury, was whether the business of the defendant, as shown by the evidence, was conducted at a *"corporate profit,"* as contemplated in the Act of June 4, 1901, P. L. 364, as amended by the Act of May 28, 1915, P. L. 599, to which reference will hereinafter be made. Incidentally, we also submitted to the jury, for reason which we stated (see Charge of the Court, page 47), whether, under the provisions of the act of assembly, the paving of Herr Street along the property of the defendant constituted an *"improvement"* to said property. The verdict of the jury in favor of the plaintiff answered these questions in the affirmative. The defendant now moves for judgment in its favor upon the whole record. In order to intelligently discuss the question thus raised in the said motion, it becomes important for us to review the several acts of assembly under which the defendant was incorporated, and also the acts of assembly which, it is contended, exempt the defendant from the payment of the municipal claim now in controversy.

The defendant, the Harrisburg Cemetery Association, was incorporated by the Act of Feb. 14, 1845; P. L. 26, in which it was provided, *inter alia*, that said incorporators "shall have power to purchase, have, hold and enjoy to them and their successors" a tract of land which shall not exceed twenty acres, and the said corporation "shall have authority to receive gifts or bequests for the purpose of ornamenting or improving said cemetery, and to hold such personal property as may be necessary to carry out the object of this act."

The affairs of the corporation "shall be conducted by a president and five managers," who "shall have the power to lay out and ornament the grounds purchased for said cemetery, to erect such buildings thereon as may be necessary for the enjoyment of the same, to lay out, sell and dispose of burial lots, . . . and to make such by-laws, rules and regulations as they may deem

proper for conducting the affairs of the corporation, for the government of lot-holders and visitors to the cemetery, and for the transfer of lots and the evidence thereof."

In section 4 of said act it is provided "that every lot conveyed in said cemetery shall be held by the proprietor for the purpose of sepulture alone, transferable with the consent of the president and managers, and shall not be subject to attachment or execution, and that the said cemetery shall hereafter be forever exempted from taxation."

It is further provided in section 5 "that as soon as money received from the sale of lots in said cemetery shall be sufficient to pay the purchase money expended by the persons hereby incorporated, with interest, and the expenses that shall have been incurred by them in laying out, enclosing and improving the grounds, then each lot-holder shall become a member of the corporation and have a right to vote for the officers thereof: . . . Provided, that all the money raised thereafter from the sale of lots shall be expended in *improving, repairing* and *maintaining* said cemetery."

By subsequent acts of assembly, the corporation was permitted to increase the acreage of its holdings. Also, it was provided in a supplement to said act that the board of managers of said corporation "are hereby authorized and required to invest from time to time, as they may deem expedient, any of the revenue not immediately required for repairing and maintaining said cemetery, in the stock or public debt of the United States, or of the State of Pennsylvania, or on real estate security, to create a perpetual fund; the interest derived from such investment to be applied to the uses and purposes of said cemetery, and any investments heretofore made by them are hereby legalized and confirmed; and it shall not be lawful for the managers aforesaid to use the principal of the fund so set apart for any purpose, but the same shall remain as a perpetual fund:" Act of April 6, 1868, § 2, P. L. 728.

It appeared from the evidence that, in pursuance to the charter rights of this corporation as granted by the said act of assembly, its amendments and supplements, it proceeded to purchase land, to conduct and operate a cemetery and to exercise all of its corporate powers. It now claims to be exempt from payment of the lien filed against its property by the City of Harrisburg for the paving of the south side of Herr Street. An examination of the acts of assembly exempting property from taxation will, therefore, be enlightening.

By section 29 of the Act of April 16, 1838, P. L. 525, it was provided that all churches—all burial-grounds belonging to any religious congregation, all universities—be and the same are hereby exempted from all and every county, road, city, borough and school tax. By section 16 of the Act of April 27, 1852, P. L. 460, this exemption from taxation, except for State purposes, was extended to the property owned for the purpose of interment by the Mutual Burial Ground Association and the Union Burial Ground Association. By the Act of April 5, 1859, P. L. 363, it was provided: "Whenever any lot or lots, or the right of sepulture therein, shall be granted to any person or family by any incorporated cemetery company, or church, or religious congregation, within any common enclosure made by such company, church or congregation, as and for the purpose of perpetual burial of the dead, every and all lots so disposed of or used for burial shall ever after be free and exempted from all taxation so long as the same shall be used or held only for the purpose of sepulture."

The Act of May 12, 1871, P. L. 771, related only to exemption of burial-grounds and cemeteries from taxation within the limits of the City of Philadelphia. The Act of April 8, 1873, P. L. 64, which was entitled "An act to

repeal all laws exempting real estate from taxation," excepting and exempting from taxation all burial-lots exempt by the Act of 1859, and "the lands and premises of all cemetery companies where such property is held in trust for the sole purpose of improving said lands and premises, and whose revenues, of whatever kind, are devoted to that object and in no way inure to the benefit or profit of the corporators, or any of them," provided that no burial-lots sold to individuals for burial of the dead shall be liable to levy and sale for any taxes whatsoever.

Article IX, section 1, of the Constitution of 1874 provides: "All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws, but the general assembly may by general laws exempt from taxation public property used for public purposes, actual places of religious worship, places of burial not used or held for private or 'corporate profit,' and institutions of purely public charity."

Section 2 of said article provides that "All laws exempting property from taxation, other than the property above enumerated, shall be void."

The legislature, by the Act of May 14, 1874, P. L. 158, provided that all burial-grounds not used or held for private or corporate profit shall be exempt from all and every county, city, borough, road, school and poor tax. Interpreting this act of assembly, it was held by the Supreme Court that the exemption from taxation of places of burial not used or held for private or corporate profit did not apply to a municipal assessment for paving the street in front of a graveyard; that the constitutional exemption related to taxes proper as distinguished from special assessments imposed upon property within limited areas for the payment of local improvements therein, by which the property assessed is specially and peculiarly benefited and enhanced in value to an amount at least equal to the assessment: New Castle City v. Jackson, 172 Pa. 86; Broad Street, etc., Church's Appeal, 165 Pa. 475; Beltzhoover Borough v. The Heirs of Jacob Beltzhoover, 173 Pa. 213; City of Philadelphia v. Franklin Cemetery, 2 Pa. Superior Ct. 569; Philadelphia v. Union Burial Ground Society, 178 Pa. 533.

We have no doubt that the legislature, having the decisions from which we have quoted in mind, enacted the Act of June 4, 1901, P. L. 364, as amended by section 3 of the Act of May 28, 1915, P. L. 599, which provides that "all real estate, by whomsoever owned and for whatsoever purpose used, shall be subject to all taxes and municipal claims herein provided for, except that all property owned by the State, county, city or other municipal divisions, the actual places of religious worship, places of burial not used or held for private or *corporate profit*, and institutions of purely public charity shall not be subject to tax on municipal claims except for removals of nuisance, for sewer claims and sewer connections, or for the curbing, paving, repaving, repairing the footways in front thereof. . . ."

The constitutionality of this legislation was sustained in Pittsburgh v. Calvary Cemetery Ass'n, 44 Pa. Superior Ct. 289; and in Union Dale Cemetery Co.'s Case, 227 Pa. 1, it was held a general grant of power by the legislature to municipalities to assess the cost of authorized improvements against property benefited was not intended to make a departure from the fixed policy of the Commonwealth not to subject places of sepulture to lien, levy and sale. It was further held in that case: "Where the charter of a cemetery company exempts the land of the company and the burial-lots therein 'from execution, attachment, taxation or any other claim, lien or process,' a municipal lien for sewer improvement cannot be filed against the land of the company or the

burial-lots. The General Sewer Act of April 28, 1899, P. L. 100, does not repeal the special charter immunities of such a company, nor are they repealed by the Acts of June 4, 1901, P. L. 364, and March 19, 1903, P. L. 41."

It was also held that the legislature may alter, revoke or annul any privilege or immunity conferred by the act of incorporation, but when it does so, the intention should clearly appear from the language used.

At this juncture, we direct attention to the exemption in the Act of 1845, incorporating the defendant corporation, which provides that every "lot" conveyed in said cemetery . . . shall not be subject to attachment or execution, and that the said cemetery shall hereafter be forever exempt from taxation. This exemption from taxation does not apply to municipal assessments: New Castle City v. Jackson, 172 Pa. 86, and other cases heretofore cited. The distinction between the reservation in the instant case and that referred to in Uniondale Cemetery Company's case is apparent and important. In the instant case, only lots sold by the defendant corporation were exempt from execution, levy and sale under its charter. Furthermore, the defendant corporation is authorized to expend its income, including the interest derived from its invested funds, in "improving, repairing and maintaining said cemetery:" Act of Feb. 14, 1845, P. L. 26. A municipal claim is not a tax for general purposes, but an assessment for improvement in value of the land in the particular district. It was arrived at by the foot-front rule instead of a special finding by viewers or jury; that the lands were [not] in fact enhanced in value by the amount of the claim makes no difference: Harrisburg v. McPherran, 14 Pa. Superior Ct. 473. The paving of the south side of Herr Street being an "improvement" to the property which enhanced its value (Broad Street, etc., Church's Appeal, 165 Pa. 475), is such an improvement within the contemplation of said Act of 1845 for which said corporation was authorized to expend its current funds. The ruling in the Union Dale Cemetery Co.'s Case, 227 Pa. 1, does not apply to the instant case.

The case nearest in point to sustain the contention of the plaintiff is Mount Oliver Borough v. German Congregation, etc., 51 Pa. Superior Ct. 343. In that case the cemetery was owned by an incorporated church congregation, which sold lots to its members and non-members, and placed the proceeds in its own treasury and used them for church purposes. Held, that said cemetery was not within the provisions of section 5 of the Act of June 4, 1901, P. L. 364, which exempts from taxation and municipal claims places of burial not used or held for private or "corporate profit." We quote from the opinion of Judge Macfarlane, who, himself, quotes from Brown's Heirs v. Pittsburgh, 1 Monaghan, 8: "'It is urged by defendant's counsel that there can be no profit within the meaning of the act unless the revenues exceed the expenses. In other words, that, until it appears the income derived from a place of burial is greater than the expenses incident to its improvement, it cannot be taxed. But this is confounding profit in its enlarged sense with net profits, or the difference between expenses and income. I do not think it was intended to allow the church corporation to escape taxation of its property not used for church purposes by continually making improvements equaling its income, thus continually increasing its value. The result of defendant's position, if carried out, would be to allow all expenses of a church to be paid out of the profit of its cemetery property, which would be free from taxation. Every dollar realized by the church after paying the expenses of carrying on the cemetery as such is for corporate profit.'"

Writing the opinion of the Superior Court in the case from which we have quoted, it was said by Head, J., page 346: "In determining the soundness of

such claim for exemption, the statute creating an exempt class must be strictly construed against the claimant. If his right to the exemption be doubtful, the doubt must be resolved in favor of the State or the municipality in obedience to that fundamental principle of government which requires that the burden of taxation be equally borne by all: Cooley on Taxation, 146; Academy of Fine Arts v. Philadelphia, 22 Pa. 496; Com. v. Cover, 29 Pa. Superior Ct. 409."

The very earnest argument of counsel for the defendant has failed to convince us that his defence to plaintiff's claim for the municipal improvement is free from doubt, in which event the doubt must be resolved in favor of the municipality—the plaintiff in this case.

Having considered in hasty review the act of assembly creating the defendant corporation, the acts of assembly exempting certain property from taxation, and municipal claims, and the decisions of the Supreme and Superior Courts in interpretation thereof, we will now take up and consider the motion of the defendant for judgment in its favor upon the whole record.

It is contended that we erred in refusing to affirm or in reserving the fourth, fifth, sixth, seventh, eighth and ninth points of the defendant submitted to us at the trial, upon which we were requested to instruct the jury. We would have affirmed the defendant's fifth point had it not omitted the word "improvement." We were requested to instruct the jury that the defendant was required to invest from time to time any revenues not immediately required for repairing and maintaining the cemetery, etc. The Act of 1845 provides that all moneys raised shall be expended in *"improving,* repairing and maintaining said cemetery." At the trial we were of the impression, and we still think, that the word "improvement" or "improving" was important. We submitted to the jury for its decision whether the paving of the south side of Herr Street was such an *improvement* to the property of the defendant contemplated by the Act of 1845 for which the defendant was bound to pay: Broad Street, etc., Church's Appeal, 165 Pa. 475. Had the word "improvement" or "improving" been added to the point, we would have affirmed it.

The *fourth* point requested us to instruct the jury that the property against which the claim is filed is a place of burial not used or held for private or "corporate profit." It is now contended by counsel for the defendant, and was so contended at the trial, that this was a question of law which it was the duty of the court to determine, and that it should not be submitted to the jury. Whether the business of the defendant corporation is conducted at a corporate profit was really the chief point in controversy. It appeared from the testimony that the defendant was incorporated as a corporation of the first class; that is, not for profit; that the cemetery is now owned by the lot owners, who control the corporation; that the prices for the sale of lots has been advanced with the growth of the city and increasing demand for burial facilities. Out of the proceeds of such sales the corporation has made extensive improvements, laying out their cemetery and other lands acquired by them, also now paid for, like town lots, improving the roads with limestone and some with tarvia pavement, erecting the necessary and convenient structures for operating a cemetery, including a residence for the superintendent, and in every respect operating it as a business corporation.

In addition to making these improvements, they have accumulated from the sale of lots a fund of more than $140,000 permanently invested; they have remaining unsold lots of a value at present prices of something like $250,000, and at prices which they expect to realize of $400,000 or $500,000. When all

the lots are sold, as the company is now being managed, they expect to have a permanent fund of $500,000 or $600,000 to be used as an endowment for the maintenance of the cemetery. In addition to such provision for maintenance, they also have a sum in excess of $60,000, made by private bequests to the cemetery association, or to individuals or trust companies for the care of lots and graves in the cemetery. .

It appears from the testimony that each year the company has an operating revenue, without regard to lots sold, of approximately $20,000, while it spends for operation, improvements and betterments $2000 or $3000 more than its revenue; and, in addition, it sells each year lots of the value of $10,000 or $12,000, so that its cash receipts each year from all sources exceed its cash expenditures by almost $10,000.

It further appears from the testimony that the cemetery association engages in the business of caring for the lots and providing for shrubbery. It is also in the business of erecting foundations for monuments, and under its rules requires that all such work be done by the employees of the defendant, and the moneys which it receives in this manner amount to more than the actual cost of doing the work.

We were under the impression, therefore, in view of the evidence, the question was for the jury to determine whether this defendant was operating at a corporate profit. We are still of that opinion. In Trial by Jury, by Chief Justice Moschzisker, section 311, we find the following: "Recent trend of decisions is back to rule that credibility of witness is for jury where case depends on oral testimony, unless evidence depended on is mere scintilla. This review of the Pennsylvania authorities shows a decided drift back to the old rule, so well put by Justice Sharswood in Rell v. Elder, more than fifty years ago, where he said: 'However clear and indisputable may be the proof, when it depends upon oral testimony, it is, nevertheless, the province of the jury to decide under instructions from the court as to the law applicable to the facts, and subject to the salutary power of the court to award a new trial if they should deem the verdict contrary to the weight of the evidence.'" See, also, McGlinn Distilling Co. v. Dervin et al., 260 Pa. 414; Reel v. Elder, 62 Pa. 308; Derrick et al. v. Harwood Electric Co., 268 Pa. 138, and Kelly v. Director General of Railroads, 274 Pa. 470.

To have affirmed defendant's fourth request for instructions would have resulted in binding instructions to the jury. We find no error in our refusal so to do. We reached the same conclusion with regard to defendant's *sixth* request for instruction. It is wrong in principle and would also have resulted in binding instructions to the jury to find a verdict for the defendant. We reached the same conclusion with regard to the *seventh, eighth* and *ninth* requests for instructions. As we were of the opinion that the case should go to the jury, we could not have affirmed any of these requests. Having reached the conclusion that, in view of all the evidence, it was for the jury to determine whether the business of defendant was conducted for corporate profit, we could not so decide as a question of law. The verdict of the jury having determined this question in favor of the plaintiff, we are not disposed now to interfere with its conclusion by rendering a verdict for the defendant upon the whole record.

Counsel for defendant places much stress upon the definition of "profit" found in Goodhart v. Railroad Co., 177 Pa. 1, at page 15, where Mr. Justice Williams defines *"profit"* to represent the net gain made from an investment or from the prosecution of some business after the payment of all expenses incurred. With this definition we are in accord. It seems to us to fit in

exactly with what happened in the defendant corporation. After conducting its business all these years, it has investments of $140,000, and it has 187,000 square feet of land now for sale upon which it may realize as much as $400,000. All this money it expects to invest in good securities, so that when the land is sold they may have an investment of between $500,000 and $600,000, the interest of which shall be used and expended "in improving, repairing and maintaining said cemetery." Corporate profits belong to the corporation, not to the stockholders, and are liable for corporate indebtedness: 2 Cook on Corporations (8th ed.), §, 534, quoting Corgan v. George, etc., Co., 218 Pa. 386.

It is plain that the legislature did not intend by the legislation of 1901, as amended by the Act of 1915, to exempt all places of burial because it added to said exemption the qualifying words "not held or used for private or 'corporate profit.'" If they had said "not held or used for private profit," then it would be reasonably clear that they intended to exempt all burial-grounds except where the cemetery was a private enterprise or a corporation organized for profit; but we must give some effect to the use of their term "corporate profit." We have, then, in the instant case, a burial ground used and held not for private profit but for "corporate profit." To quote from the definition of "profits" found in Bouvier's Law Dictionary, beginning at page 2737, or volume 3 of Words and Phrases, 2nd series, beginning at page 1239, and other authorities, would extend this opinion to an unnecessary length. We think the definition we have above quoted from the decision of the Supreme Court of Pennsylvania sufficiently defines its meaning.

We fail to find any substantial error in the trial of this case, and the motion of the defendant for judgment in its favor upon the whole record must be, and is, therefore, overruled. We direct that judgment be entered on the verdict in favor of the plaintiff.

From Homer L. Kreider, Harrisburg, Pa.